# Guarantee Trust & Safe Dep. Co., Exr., v. Waller, Appellant.

*Wills—Devisavit vel non—Trial—Rulings on evidence—Charge of court—Experts—Material error.*

1. In the trial of an issue devisavit vel non, where it is claimed that the decedent was suffering from senile dementia at the time

the will and codicils were written, and was also suffering from special delusions, the trial judge has a wide discretion in the admission of testimony concerning the decedent's mental capacity, and his action in admitting testimony of witnesses to throw light upon either of these questions, will not be interfered with in the absence of clear error.

2. In the trial of such a case, it is not error for the court to instruct the jury that "less capacity is needed to make a valid will than is sufficient in most cases to transact ordinary business."

3. It is not error for the court to instruct the jury that the opinion of an expert, based upon concededly disputed facts, is of very little weight.

4. While it is not strictly accurate for the court in the trial of such a case to charge the jury, in answering a point, that "medical testimony on the subject of mental incapacity is the lowest that is ever allowed in a court of justice, and when opposed to established facts is not entitled to much respect," this does not constitute reversible error, where it appears from the context and the circumstances that the jury must have understood the reference to be to expert medical testimony.

5. It is not error in the trial of such a case for the trial judge to refuse a point contradictory in terms, and which assumes facts which were for the jury to decide, under all the circumstances of the case.

6. After the trial of a case on the merits, particularly one in which much time was consumed, and many witnesses examined, and every detail investigated, the question is not, was the case tried with strict correctness in every respect, but was substantial error committed in any material particular.

Argued March 25, 1913. Appeal, No. 153, Jan. T., 1913, by defendant, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1910, No. 4719, on verdict for plaintiffs in case. of Guarantee Trust & Safe Deposit Company, Executor of the Estate of William H. H. Waller, deceased; Lucy J. Schellenberger, Kate Waller and Josephine Grogan v. Charles B. F. Waller. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Trial of issue devisavit vel non. Before STAAKE, J.
The following rulings on evidence appeared from the

record: Defendant, the contestant, made an offer of proof by an expert alienist, which, with the objection and ruling thereon, was as follows:

"It is offered to show by the witness on the stand that there is a clear mark of distinction between delirium and delusion, that the witness was the attending physician at the time of the death of Mr. Waller; that Mr. Waller never during his last illness suffered from delirium, but the expressions to which he gave voice in his last illness were expressions springing from the delusion which continued in his mind from some time anterior to 1907 down to the date of his death; this for the purpose of offering testimony of the expressions made by Mr. Waller within three weeks of his death, showing the existence of the delusion.

"Mr. Saul: 'I object to the offer because the occurrences relate to a time after the date of the last codicil and within three weeks of the death of the testator and that the testimony is offered for the purpose of having an inference drawn to a statement of facts which is within the knowledge of the witness and who has so testified.'

"The court overrules the offer; first, on the basis of the objections made by the counsel for plaintiff, and also because the witness on the stand has already given his testimony covering the dates of the execution of the last will and codicil.

"The court grants counsel for the defendant an exception to its ruling." (1)

Plaintiff, proponent, asked an expert alienist a question, which, with the objection and ruling thereon, was as follows:

"Q. A man in Mr. Waller's condition, having delusions that his wife and son are against him—that his wife may poison him in some manner; that the son may kill him in some manner; that his wife draws off the hot water so that he will get a chill and die—and in 1903 makes a will by which he leaves the income

of his estate, with the exception of small legacies, to his wife for life with the right to draw on the principal, and the balance after her death to the son—and who in 1907 makes a will by which he leaves annuities, which annuities in the course of time will eat up the entire estate, so that there will be nothing for the son in the ordinary course of events—what effect would you say those delusions would have upon that change between the two wills of 1903 and 1907? Objected to. Objection sustained. Exception for defendant.

"The Court: 'That question contains statements which have not yet been evidenced so far as the progress of this trial is concerned, and, therefore, I think for that reason the question is objectionable and also for the reason I expressed yesterday and to which I still hold—that is, that where a physician has had and has embraced the opportunity of actual examination and knows the actual condition, that he ought to give his conclusions from his knowledge, as being better evidence than his conclusion which he states based upon a hypothetical question propounded to him.'" (2)

The court overruled defendant's objection to a question put in the cross-examination of one of the defendant's witnesses. The question and ruling were as follows:

"Q. Do you doubt for one moment that Mr. Waller was capable of taking charge of his affairs in his dealings with you? Objected to. Objection overruled. Exception for defendant. A. No, I didn't." (3)

A question directed to an expert alienist on cross-examination by the plaintiff, and the ruling thereon, were as follows:

"Q. In your opinion, was there any mental impairment at that time? Objected to. Objection overruled. Exception for defendant. A. 'I shall have to say again that I did not know of any—did not observe any.'" (4)

Defendant made an offer of proof which with the objection and ruling thereon was as follows:

"I offer to prove by Miss Osborne that she is a trained nurse and has had large experience in nursing cases of senile dementia; that she went to nurse Mr. Waller about three weeks before his death and within ten weeks after the date of the last codicil; that as soon as she saw Mr. Waller she knew that he was suffering from senile dementia; that he made certain declarations to her concerning his attitude toward Mrs. Waller showing that he had persecutory delusions; that he was also incoherent in his talk and the witness believes was on the borderland of what has here been termed the third stage of senile dementia or complete dementia.

"(Mr. Saul objected to the offer on the ground of the incompetency of the witness to express an opinion as to senile dementia, and also because the offer proposed to prove what took place only three weeks prior to the death of Mr. Waller.)

"The Court: 'The court has listened with a great deal of interest to the arguments, but is not convinced that the ruling already made should not stand. The fact has been overlooked in the argument that testimony has been produced here showing that there were apparently during the period alleged as the progressive state of the senile dementia, times at least when, according to some of the witnesses, the testator was apparently as pleasant as he had been during the period that it is admitted he was one of the most courteous of gentlemen, and when there was no allegation of the beginning of the progressive stages of senile dementia. The case referred to in 122 Pennsylvania was one in which the question was considered of the susceptibility of the testator's mind to undue influence. There is one controlling feature of the case which would seem to be sufficient to exclude this offer—that is, that the witness, although a trained nurse, was not necessarily so qualified as to pass judgment which is to be expressed as affecting the testamentary capacity of the testator at the time of the execution of the will and codicils.

"Mr. Matthews: That is another question. My offer was intended to cover both separately.

"The Court: 'You can arrange that as you please, and I will sustain the objection to the offers as separately made, both as to the competency of the witness to testify and to the declarations made by the decedent at that time.'

"(The court granted the defendant an exception to the above ruling.)" (5)

Plaintiff asked a question of an expert alienist which, with the objection and ruling thereon, was as follows:

"Q. Doctor, does politeness to outsiders, to persons outside the family, have any bearing at all as to whether a man has senile dementia or not? Objected to.

"The Court: 'Do you mean when a man has senile dementia it is limited, in its effects as to others, to the members of the family, and as to all other people he is normal?'

"Mr. Matthews: 'I mean whether that has any bearing upon the matter at all—the fact that he is polite to outsiders?'

"The Court: 'You are asking the doctor whether a person affected with senility of that character can be polite to strangers?'

"Mr. Matthews: 'Yes—about whom he has no delusions.'

"The Court: 'I will sustain the objection to that.' (Exception for defendant.)" (6)

Various questions directed to witnesses called on behalf of the plaintiff were objected to by the defendant, which questions and rulings thereon were as follows:

"The Court: 'I will allow the question.' (Exception for defendant.)

"The stenographer repeated the question as follows:

"Q. From your observation of Mr. Waller during these years, what is your opinion as to his mental state when you knew him?

"A. I have always thought his mental state was per-

fectly good—never noticed anything peculiar about him at any time. He seemed to be just like anyone else. He was rather courteous in manner—rather more formal than ordinary people and outside of that I never noticed any difference from the usual manner of people I know." (7)

"Q. From your observations of Mr. Waller during this period, what is your opinion as to his mental state as you saw him? (Objected to.) (Objection overruled.) (Exception for defendant.)

"A. I saw nothing in his actions to ever raise any question in my mind in regard to his mental capacity." (8)

"Q. From the opportunities you had of observing Mr. Waller during these years, what is your opinion as to his mental state? (Objection overruled.) (Exception for defendant.)

"A. He never gave me any indications, from what I observed, of any mental unsoundness or peculiarities. I hadn't the slightest suspicion of any mental trouble." (9)

"Q. Now I want you to tell the jury your opinion as to the way in which this man transacted this business with you. (Objected to.) (Objection overruled.) (Exception for defendant.) A. Well, in what way do you want me to say? This transaction was usual—nothing unusual in it." (10)

Defendant presented this point: If the jury find that the testator in the case on trial had an intelligent consciousness of the nature and effect of his act, a knowledge of the property he possessed, and an understanding of the disposition he intended to make of it, he would not have the capacity to make a will the law requires, unless the will was not made under a delusion of fact as to his son and only child, whom he has practically disinherited, and if the jury find that such delusion was operative at the time of the making of the will in question, then their verdict should be for the defendant.

"Answer. The twelfth point is declined as being contradictory in its terms."    (16)

*Errors assigned* were the above rulings on evidence, quoting them (1-10), and the answer to point (16); other assignments are explained in the opinion of the Supreme Court.

*Alex. Simpson, Jr.,* with him *Trevor T. Matthews,* for appellant.

*Maurice Bower Saul,* with him *Daniel A. Stewart* and *John G. Johnson,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, May 5, 1913:

The Orphans' Court of Philadelphia County granted an issue to the Common Pleas to determine the validity of the will of William H. H. Waller, deceased. The issue in terms was, "Whether or not the said William H. H. Waller at the time of the execution of the alleged will and testament and the codicils thereto was of sound, disposing mind, memory and understanding"; and the plea was, "At the time of the alleged execution of the said alleged will and codicils......the said William H. H. Waller was not of sound, disposing mind, memory and understanding."

The testator died at the age of sixty-two and left to survive him a widow and a son; the latter is the contestant and was named as defendant in the court below. Under the will annuities are granted to the wife and some other near relatives; the son is given an annuity of $500 upon the death of his mother, and after the decease of all the annuitants the residue of the estate goes to him. But it is provided in the will that in the event of a deficiency of income the principal shall be used to pay the annuities, and since the estate is not a large one there is a possibility of its absorption before the provision for the benefit of the contestant can take ef-

fect. In this connection, however, the testator states,
"I feel that this provision is a liberal and just one for
my son as he has already had a large amount of money
for his maintenance and other purposes during his life."

The issues were submitted to the jury in an elaborate
charge in which the relevant rules of law were correctly
stated; the verdict sustained the will, and the defendant
has appealed. No useful purpose would be served by
discussing in detail each of the sixteen assignments of
error and we shall not attempt to do so. The first ten
assignments go to rulings on the evidence, most of
which involved the exercise of judicial discretion; we
have examined each of them and find no reversible error.
A reading of the entire record plainly shows the con-
testant took the position that his father was suffering
from senile dementia at the time the will and codicils
were written; and this condition is defined in medical
jurisprudence as "profound general mental incapacity":
2 Century Dictionary 1524 (also see Pyott v. Pyott, 90
Ill. App. 210, 221; Hall v. Unger, 11 Fed. Cases 261,
263, Case No. 5,949; People v. Lake, 2 Parker Crim. R.
215, 218; 13 Cyc. 778; 9 Am. & Eng. Ency. of Law (2d
Edition) 216; Anderson's Law Dictionary 338; Wharton
& Stille's Medical Jurisprudence, Secs. 975 to 993).
While special delusions concerning the contestant were
alleged, they were treated as growing out of the tes-
tator's generally enfeebled mental state. The trial
judge had to keep constantly in mind both of these
phases, viz: the allegation of general testamentary in-
capacity and the claim that special delusions existed,
and this goes far to explain the rulings already referred
to; also to sustain those complained of in the assign-
ments which we are about to discuss.

The affirmation of the plaintiff's point to the effect
that, "less capacity is needed to make a valid will than
is sufficient in most cases to transact ordinary business,"
was a correct statement of law (Thompson v. Kyner, 65
Pa. 368, 382) and could have done the defendant no

harm. Another of the plaintiff's points stated: "The opinion of an expert with no personal knowledge of the testator and which is given on a hypothetical question, based on disputed facts, is of very little weight." In affirming this the trial judge said: "If it is a hypothetical question based upon admitted facts, it would be one thing, but if it is a hypothetical question based on disputed facts, it would be different." All of this merely meant that if an expert gave an opinion based upon concededly disputed facts, that is, facts not assumed to be true, such opinion would be of little value. We think the answer must have been so comprehended by the jury, and that no harm was done thereby to the appellant. It might have been better had the trial judge not affirmed the plaintiff's tenth point to the effect that "medical testimony on the subject of mental incapacity is the lowest that is ever allowed in a court of justice and when opposed to established facts is not entitled to much respect"; but, no doubt, the jury understood that the point had reference to expert medical testimony, and we are not convinced that any harm was done by its affirmance (Central Guarantee Trust & Safe Deposit Co. v. White, 206 Pa. 611, 615; Draper's Est., 215 Pa. 314, 316). The sixteenth assignment is the only remaining one which requires any special notice; it complains of the refusal to affirm one of the defendant's requests for charge concerning the effect of the testator's alleged delusion as to his son. This request ends with the instruction that, "If the jury find that such delusion was operative at the time of the making of the will in question, then their verdict should be for the defendant," and it contains a statement that the testator had practically disinherited his son. The trial judge refused the request, saying it was contradictory in terms, but he might well have declined it for other reasons. In the first place it would not have been proper for the court to tell the jury that the testator had practically disinherited the contestant; whether or not that was

true was a question for them to decide and consider along with all the other facts in the case; next, the mere fact that the alleged delusion as to his son was in any sense, "operative at the time of the making of the will," would not be sufficient to call for a verdict for the defendant; to work this effect the delusion would not only have had to be "operative" but its operation would have had to control the will of the testator (Taylor v. Trich, 165 Pa. 586, 605; Buchanan v. Pierie, 205 Pa. 123, 126). The phraseology of the request did not take into account sufficiently this latter important essential; hence, the point as drawn could not properly have been affirmed. Furthermore, the law upon this precise subject was correctly and more clearly stated in the general charge.

A period of two weeks was consumed in the trial of this case. Many witnesses were produced, and every detail throwing light upon the issues was investigated. "After a trial on the merits the question is not, was the case tried with strict correctness in every respect, but was substantial error committed in any material particular" (Satler Lumber Co. v. Exler, 239 Pa. 135); we are not convinced that such error was committed or that a wrong verdict was reached.

All the assignments are overruled, and the judgment is affirmed at the cost of the appellant.