## Olshefski's Estate.

Argued December 5, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Louis Cohen*, with him *J. Grant Kehler,* for appellant.

*John L. Pipa, Jr.,* for appellees.

OPINION BY MR. JUSTICE DREW, February 1, 1940:

Honoretta Olshefski, a widow, died on June 19, 1936, at the age of sixty-nine. By her will, dated May 14, 1936, she bequeathed the bulk of her estate, of an approximate value of $10,000, to a daughter, Mary Gill, and named her executrix. Testatrix's eight other children were left but one hundred dollars each, and they are the contestants in the present proceeding. After the probate of the will, an issue devisavit vel non was awarded to pass upon the charges of lack of testamentary capacity, undue influence, and improper execution. In the verdict, the jury did not pass upon the question of the execution, but found that testatrix lacked

testamentary capacity and was unduly influenced. Motions for judgment n. o. v. and for a new trial were overruled by the court in banc. From the judgment entered on the verdict, the proponent, Mary Gill, has taken this appeal, assigning as error, inter alia, the failure of the trial judge to direct the jury that there was not sufficient evidence to sustain either the charge of lack of testamentary capacity or that textatrix had been unduly influenced.

A careful examination of the record convinces us that these contentions must be sustained. The will was properly executed in every particular. In this situaation, a presumption of testamentary capacity and lack of undue influence arises, and the contestants must adduce compelling evidence to upset the will, since the law favors its validity: *Wertheimer's Est.*, 286 Pa. 155, 160; *Lawrence's Est.*, 286 Pa. 58, 64; *Grubbs v. McDonald*, 91 Pa. 236, 241.

In speaking of testamentary capacity, this court, in *Null's Est.*, 302 Pa. 64, 66, said: "Capacity relates to soundness of mind, or in other words a mind that has full and intelligent knowledge of an act engaged in, an intelligent perception and understanding of the dispositions made of property, and the persons and objects one desires shall be the recipients of one's bounty: Lawrence's Est., 286 Pa. 58, 65." To rebut the presumption of sound and disposing memory, these contestants and one doctor, a general practitioner, testified that deceased had a weakened mind and was addicted to excessive use of alcohol. The doctor testified that he had first treated testatrix three months prior to the execution of the will for a hemorrhage following an automobile accident, in which she sustained a blow on the head. He stated that her brain was atrophied, a condition which would become progressively worse. He concluded that she must have been incapable of testamentary disposition on the day of the execution of the will. This witness admittedly, however, had made no examination to

determine her mental capacity and was extremely vague as to when he had last treated her, which at best was a considerable time prior to the execution of the will. He based his conclusions on what he thought her physical condition to be. He did not relate any actual facts to substantiate his conclusions as to her mental condition. Accordingly, his opinion was not grounded upon any definite or real knowledge of Mrs. Olshefski's testamentary capacity at the time she executed her will. Such vague and inconsequential testimony is of very little value as evidence.

The contestants, all of whom are decidedly interested, testified that at times their mother had lapses of memory and delusions, attributable to her impaired physical condition and to her alleged use of alcohol. It is well established, however, that it requires more than failure of memory, or even habitual drunkenness, to constitute incapacity to execute a will. The test is whether the testator appreciates, in a general way, who his relations are and what property he possesses, and indicates an intelligent understanding of the disposition he desires to make of it. If he does so at the time of the execution of the will, he has testamentary capacity: *Phillips's Est.*, 299 Pa. 415, 418; *Tetlow's Est.*, 269 Pa. 486, 496. It must be remembered that less capacity is required to make a valid will than is sufficient in most cases to transact ordinary business: *Phillips's Est.*, supra, at page 422; *Guarantee Trust & Safe Dep. Co., Exr., v. Waller*, 240 Pa. 575, 583. In their testimony contestants revealed that their mother enjoyed full possession of her mental faculties a considerable part of the time, and there is nothing to show that she was incompetent at the time she executed the will.

As against the testimony of contestants, the proponent introduced evidence by the two subscribing witnesses who were in no way related to testatrix and who had no interest under the will. They testified that at the time of its execution testatrix was fully competent

to dispose of her worldly possessions. One of these witnesses was the scrivener, a justice of the peace, and he testified that testatrix made a detailed recitation of everything she owned and the disposition she desired to be made of it, and that in doing so, she named each of her children individually and determined just what each should receive. The evidence as to the clarity of her mind was corroborated by the testimony of the other subscribing witness. The overwhelming weight of the testimony favors the competency of testatrix.

It is claimed by contestants that Mrs. Olshefski was unduly influenced when she executed her will. While it is not clear upon what such contention is based, it would appear to be grounded on Mary Gill's providing her mother with alcoholic beverages and her solicitude towards her. The established rule as to undue influence is that "In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, . . . fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of the will": *Koons's Est.*, 293 Pa. 465, 471. There was not anything of the kind shown here. As stated in *Brennan's Est.*, 312 Pa. 335, 337: "Kindly care and solicitous attention do not amount to undue influence. . . . Legitimate family and social relations are not prohibited though provisions of a will are thereby influenced and affected; such results are their natural and proper products: Dean v. Negley, 41 Pa. 312." In the instant case the only possible influence shown to have been exerted was in contestants' favor, when the proponent and the scrivener suggested that the deceased bequeath a larger legacy to her other children. This she did of her own free will. The subscribing witnesses stated that testatrix was not under the influence of liquor when she executed the will and that she acted

entirely voluntarily. Since they were eyewitnesses of the event, their testimony is far more persuasive than the weak circumstantial evidence to the contrary offered by the contestants.

The decisive time to be here considered is that of the actual execution of the will. Contestants did not cast doubt upon proponent's proof that Mrs. Olshefski had complete possession of her dispositive faculties when the will was executed. Where, as here, a case is submitted to a jury upon clearly insufficient evidence, upon which no court should sustain a verdict, it is this court's duty to reverse: *Hamilton v. Fay*, 283 Pa. 175, 180; *Cauffman v. Long*, 82 Pa. 72, 80.

Judgment reversed, with directions to the court below to certify this result to the Orphans' Court; costs to be paid by the estate.