## Ross Will.

Argued October 2, 1946.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*E. O. Golden,* with him *Samuel Wilson* and *Harry C. Golden,* for appellant.

*Edmond C. Breene,* with him *Breene & Jobson* and *Howard Zacharias,* for appellee.

OPINION BY MR. JUSTICE JONES, November 8, 1946:

This is an appeal from a decree of the Orphans' Court of Clarion County dismissing an appeal from the probate of a will and refusing an issue with respect to the testatrix's mental capacity and alleged undue influence practiced upon her.  Unfortunately, the court below did not make the relevant and specific findings of fact which the record abundantly warrants and which would have patently justified the lower court's conclusion that the proofs offered by the contestant fell far short of that required of him.

The contestant and appellant is John F. Ross, a son of the testatrix,—Harriette J. Ross.  In his petition to the court below he alleged that, at the time of the making of the will, his mother ". . . was not a person of sound mind, capable of disposing by will of her estate" and that her execution of the will ". . . was procured by misrepresentation, fraudulent statements, undue influence, duress and constraint, practiced upon [her] by Rebecca Ross Craft, and Charles C. Ross, Jr., named in the said writing as legatees, . . .", the last named persons being the testatrix's two other children.  John, the contestant, is also a legatee to the extent of one-third of the property

disposed of by the will. Mrs. Ross died on April 9, 1944, aged seventy-eight years. The will was executed on December 8, 1942.

As the will is properly executed in every particular, there is a presumption of testamentary capacity and lack of undue influence which places upon the contestant the burden of producing compelling evidence in his effort to upset the will: *Olshefski's Estate,* 337 Pa. 420, 422, 11 A. 2d 487; *Wertheimer's Estate,* 286 Pa. 155, 160, 133 A. 144; *Lawrence's Estate,* 286 Pa. 58, 64, 132 A. 786; *Grubbs v. McDonald,* 91 Pa. 236, 241. With the contestant's duty in the premises thus plainly before him, he failed completely to offer any substantive proof in support of either of his basic allegations.

As to the testatrix's alleged lack of testamentary capacity, the contestant did not offer a single witness who was either qualified to, or did, testify concerning his mother's mentality at or near the time of the making of her will. The trifling indicia of forgetfulness on the part of Mrs. Ross in her advanced years which some of the contestant's witnesses related afforded no evidence of any impairment of the testatrix's intellect. Indeed, the testimony of one of the witnesses for the contestant in such connection actually depicted the testatrix as a woman of sound reason and strong mentality up until a few months of her death which was subsequent to the execution of the will by more than a year.

What the contestant principally relied upon for proof that Mrs. Ross lacked testamentary capacity were two pieces of documentary evidence both of which were admitted by the trial judge, over objection, in the contestant's case in chief. Neither of the papers furnished any substantive proof of the testatrix's mentality either at the time of the making of the will or at any other time. The documents were competent only for the possible purpose of refuting their authors if the latter testified to or otherwise asserted Mrs. Ross's sound mentality at all times. In no view were the papers proof of the matter

which they stated or implied relative to the testatrix's mental condition. Their role will be understood from the following.

Four to five months before the execution of the will, Mrs. Ross's family physician had made an affidavit that she was ". . . physically unable and mentally incompetent to attend any Court or give testimony in any case at any time without serious danger to life . . .". The physician explained that the affidavit was made and used for the purpose of saving Mrs. Ross from appearing as a witness in court in another county where she was one of the parties defendant.[1] She was then seventy-six years old and suffering with increasing aggravation from a gynecological condition of long standing which ultimately necessitated an operation. At the hearing below on the appeal petition, the doctor testified for the proponents that Mrs. Ross possessed testamentary capacity at the time she executed her will. Whether the affidavit served to impair the probative value of his testimony was peculiarly a matter for the consideration of the court·below as the trier of the facts. Apparently the affidavit was of no discrediting effect; and the court was warranted in ignoring it entirely. It proved absolutely nothing in the will contest: cf. *Aggas v. Munnell*, 302 Pa. 78, 83-84, 152 A. 840. The other paper was a petition which Charles C. Ross, Jr., one of the proponents, had signed and sworn to seven months before his mother's execution of her will for the then intended purpose of having a guardian appointed for her as a mentally incompetent person. Although the petition was filed in court, no hearing was ever had thereon; nor was it ever acted upon otherwise. Charles C. Ross, Jr., explained the petition as the individual plan and work of his mother's attorney at that time. Here, likewise, the aver-

---

[1] The doctor testified:

"I was trying to keep that woman out of any cross-examination that she might have to go through at her age."

ments of the petition proved nothing with respect to Mrs. Ross's mentality at the time of the making of her will. The most the petition was capable of was as some possible refutation of Charles C. Ross, Jr., in rebuttal when he testified at the hearing below that his mother was mentally competent to make a will.

For his charge of fraud and undue influence the contestant relies on the fact that in the year preceding the execution of the will Mrs. Ross, then in advanced years and poor physical health, voluntarily conveyed to her daughter, Rebecca, a property in Cooksburg and to her son, Charles, the family home in Clarion with a division of the furnishings of the home between Rebecca and Charles, Jr., to the extent they desired such. The fact is that the mother was no less concerned for the welfare of John. For a number of years he had been confined in institutions as a weak-minded person. By her will (in addition to confirming in Rebecca and Charles, Jr., title to the two properties theretofore conveyed to them by deed) Mrs. Ross made an equal division of her remaining estate among her three children, Rebecca, Charles, Jr., and John for whom the Citizens Trust Company of Clarion was guardian. In the case of John, the will further provided that if the income from his share was not sufficient for his maintenance, corpus might be used for that purpose in the discretion of the guardian. This direction was purposely similar to the provision made for John by the earlier will of his deceased father, Dr. Charles C. Ross, whose will it was the mother's expressed desire to follow in like testamentary regard.

The contestant's charge of fraud and undue influence is devoid of any substance. Neither Rebecca nor Charles was shown to have the slightest supervision, authority or direction over their mother's business affairs. Nor did they otherwise occupy any position of trust or confidence toward her. There is no basis whatsoever for suggesting, as the appellant does, that Charles stood in a

confidential relation to his mother: see *Null's Estate*, 302 Pa. 64, 69, 153 A. 137. The cases which the appellant cites in this connection are not presently in point: e. g., *Shaffer v. Shaffer*, 344 Pa. 158, 161-162, 23 A. 2d .883; *McCown v. Fraser*, 327 Pa. 561, 564-566, 192 A. 674; *Dible's Estate*, 316 Pa. 553, 555, 175 A. 538.

From what we have said it should be evident that the contestant failed to make out a prima facie case. The lower court's dismissal of the appeal from the probate and its refusal of an issue were therefore proper. It is only where a contestant's proofs raise a substantial dispute as to a material matter of fact, which is not overcome in the mind of the hearing judge by the quantum and character of the proofs adduced by the proponent, that the award of an issue is justified: *Doster's Estate*, 271 Pa. 68, 72, 113 A. 831; *Tetlow's Estate*, 269 Pa. 486, 494, 112 A. 758; *Phillips' Estate*, 244 Pa. 35, 42, 90 A. 457.

In the instant case, the undisputed and credible testimony for the proponents showed that Mrs. Ross's will was drafted at her request by Lloyd F. Weaver, Esq., a member of the Clarion County bar. Mr. Weaver testified that the dispositive provisions of the will were in strict accordance with Mrs. Ross's own verbally expressed directions to him at his office on December 7, 1942, where Mrs. Ross, by prior appointment, had come in company with her nurse, Miss Berenic Thompson, for the express purpose of discussing her proposed will which Mr. Weaver was to draft. Miss Thompson, a wholly disinterested witness, corroborated Mr. Weaver in all particulars with respect to what took place at his office concerning Mrs. Ross and the matter of a will. When the will had been drawn Mr. Weaver sent it to Mrs. Ross at her home, and it was there that she, on December 8, 1942, without interference from anyone, executed the will in the presence of Miss Elizabeth Schuette, her housekeeper, and Miss Thompson, the nurse, both of whom, at Mrs. Ross's request, then signed the will as

subscribing witnesses. Miss Schuette died after the probate but prior to the hearing in the court below. It was Mr. Weaver's opinion that Mrs. Ross was "amply competent throughout" to make a will. Miss Thompson was of similar opinion. In addition to them, the family doctor testified that Mrs. Ross was mentally competent to make a will at the critical date and several lay witnesses so testified. On the other hand, there is nowhere in the record a direct assertion to contrary effect from anyone.

The efficacy of the testimony for the proponents in the circumstances shown is not hard to perceive. The fact that the will was prepared by an attorney at the testatrix's request and in accordance with her directions without interference from anyone affords an inference that the will was properly made by a person of testamentary capacity: *Brennan's Estate,* 312 Pa. 335, 341, 168 A. 25. Thus, from the undisputed facts appearing of record, there is legal corroboration of what the credible testimony directly establishes. The fact that Mrs. Ross dictated her own testamentary desires and summoned to her the witnesses to her will which she, unaided, signed in a firm and clearly legible hand was refutation of the contestant's contention of mental or physical weakness: cf. *Keen's Estate,* 299 Pa. 430, 434, 149 A. 737. The result is that aside from the fact that the contestant's case failed to raise a substantial dispute as to a material matter of fact, the proponents' evidence so overwhelms any imputation of a want of testamentary capacity or the presence of fraud and undue influence as to leave no doubt of the correctness of the action of the learned court below. Where, after a careful consideration of all the evidence, a verdict in favor of the petitioning contestant would have to be set aside as against the weight of the evidence, an issue should be denied: see *Lare Will,* 352 Pa. 323, 329, 42 A. 2d 801, and cases there cited.

The decree is affirmed at the appellant's costs.