## Higbee Will.

Argued May 23, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

382

*Anne X. Alpern,* with her *Louis Caplan,* for appellants.

*Sherman T. Rock* and *Walter M. Newman,* with them *Reed, Smith, Shaw & McClay* and *Walker & Newman,* for appellee.

OPINION BY MR. JUSTICE BELL, September 26, 1950:

Mary Higbee died February 12, 1945, at the age of 89. On April 9, 1936 she executed her will which, after minor bequests to relatives, left the bulk of her estate of $85,000. to two agnostic corporations. Miss Higbee also left four codicils made respectively on July 16, 1936, November 19, 1938, May 2, 1942, and March 25, 1944. None of these codicils made any material changes in her will.

The testator's brother and niece appealed from the probate of the will, alleging lack of testamentary capacity.

The will was drawn by decedent's lawyer who had been her attorney since 1929 and was proved, as were the four codicils, by subscribing witnesses. The burden of proving testamentary incapacity therefore shifted to the contestants: *Ash Will,* 351 Pa. 317, 41 A. 2d 620; *Plotts' Estate,* 335 Pa. 81, 5 A. 2d 901; *Keen's Estate,* 299 Pa. 430, 149 A. 737; *Ross Will,* 355 Pa. 112, 49 A. 2d 392; *De Maio Will,* 363 Pa. 559, 70 A. 2d 339; and that burden can be sustained only by clear and strong or compelling evidence of lack of testamentary capacity

or of undue influence, especially where competency was proved by the scrivener and subscribing witnesses: *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139; *Kane's Estate,* 206 Pa. 204, 55 A. 917; *Lauer Will,* 351 Pa. 438, 49 A. 2d 552; *Ross Will,* 355 Pa. 112, 49 A. 2d 392; *De Maio Will,* 363 Pa. 559, 70 A. 2d 339.

Moreover, an issue will not be awarded unless the dispute is substantial; and there can be no substantial dispute where a verdict of a jury against the will would have to be set aside as against the weight of the evidence: *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139; *DeLaurentiis's Estate,* 323 Pa. 70, 186 A. 359; *Snyder's Estate,* 279 Pa. 63, 123 A. 663; *Lare Will,* 352 Pa. 323, 42 A. 2d 801; *Ross Will,* 355 Pa. 112, 49 A. 2d 392.

Testatrix had not seen her brother for years; she apparently liked, but rarely ever saw, her niece. She had for years been interested in agnostic philosophy, but there was no evidence of undue influence on the part of, or on behalf of, the residuary agnostic legatees.

Testatrix sold flowers which she raised in her garden, on the streets, and the appellants contend that she accumulated an estate of over $80,000. principally by parsimonious living and the savings from her flower sales. While it is not clear how she obtained her money, the probabilities are that it was mainly from an inheritance from her grandfather, an inheritance from her brother, as well as money she received in an eminent domain proceeding, and by wise investment and reinvestment of her money in mortgages and bonds.

The contestants proved that the decedent was old, forgetful, at times confused and very eccentric. She had plenty of money but lived in poverty and filth; she was subject to rages and tantrums; she locked herself in her house when alone; she refused medical attention when she should have obtained it; and she was very ungrateful to those who did her a favor.

The eccentricities which contestants proved, either

alone or in combination with others, are insufficient to prove an unsound mind or lack of testamentary capacity: *Weber's Estate,* 334 Pa. 216, 5 A. 2d 550; *Brennan's Estate,* 312 Pa. 335, 168 A. 25; *Geist's Estate,* 325, Pa. 401, 191 A. 29; *Lauer Will,* 351 Pa. 438, 41 A. 2d 552; *Ross Will,* 355 Pa. 112, 49 A. 2d 392; *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139; *Lawrence's Estate,* 286 Pa. 58, 66-70, 132 A. 786; *Aggas v. Munnell,* 302 Pa. 78, 81-87, 152 A. 840. In *Aggas v. Munnell,* 302 Pa. 78, 85, 152 A. 840, the law is well stated: "Neither old age, nor its infirmities, including untidy habits, partial loss of memory, inability to recognize acquaintances, and incoherent speech, will deprive a person of the right to dispose of his own property. . . . Mr. Justice KEPHART, speaking for the Court, in Lawrence's Est., 286 Pa. 58, states, . . .: 'Old age, sickness, distress, debility of body, peculiar beliefs and opinions, incapacity to do business, partial failure of memory, neither prove nor raise a presumption of incapacity.' "

While it is difficult for most people to understand how or why a woman would bequeath her estate to an agnostic society, especially if she has friends or relatives living, we must remember that under the law of Pennsylvania "a man's prejudices are a part of his liberty. He has a right to the control of his property while living and may bestow it as he sees fit" at his death: *McCown v. Fraser,* 327 Pa. 561, 192 A. 674; *Cauffman v. Long,* 82 Pa. 72.

Contestants had the burden of proving that *at the time* testatrix made her will and/or her codicils she lacked testamentary capacity, although evidence of lack of testamentary capacity for a reasonable time before and after the making of the will is admissible as indicative of capacity or the lack of it on the particular day: *Aggas v. Munnell,* 302 Pa. 78, 152 A. 840; *Rubins v. Hamnett,* 294 Pa. 295, 144 A. 72; *Watmough's Estate,* 258 Pa. 22, 101 A. 857; *Wertheimer Estate,* 286

Pa. 155, 133 A. 144; *Brennan's Estate*, 312 Pa. 335; 168 A. 25; *Fay Estate*, 163 Pa. Superior Ct. 1, 60 A. 2d 356.

The subscribing witnesses to the testatrix's will and codicils included two attorneys and a secretary of the Trust Company, all of whom testified at length as to the physical and mental condition of the decedent at the times in question and unequivocally stated that she had clear and full testamentary capacity. With the exception of the fourth codicil, none of contestants' testimony was directed to the time of execution of the aforesaid instruments.

Testatrix's fourth codicil (made March 25, 1944) merely provided that in the event of the death of her Executor the Commonwealth Trust Company of Pittsburgh was appointed successor executor. Her attorney prepared this codicil at her request and testified in detail as to her testamentary capacity at the time of preparation and execution. Dr. Davis, a witness for contestants, testified that he saw the decedent that day after the codicil was executed and that in his opinion she did not have sufficient testamentary capacity to execute the codicil. He admitted, however, in cross-examination, that at this particular time she could have had a period of clarity and that the periods of lucid intervals outweighed the periods of confusion. However, her attorney and his secretary were positive in their statements that decedent had testamentary capacity at the time of execution of this fourth codicil and fully understood the nature of her act. She was a shrewd practical woman with business acumen sufficient to save or accumulate a substantial fortune by wise investments. Her attorney would not have turned over to her on the date of the last codicil a check for $3500. representing money from a mortgage foreclosure if he had not been convinced as to her mental ability to properly take care of it. Less capacity is needed to make a valid will than

is sufficient, in most cases, to transact ordinary business: *Gressel v. Bailey,* 363 Pa. 614, 7 A. 2d 298; *Guarantee Trust and Safe Deposit Company, Exr. v. Waller,* 240 Pa. 575, 88 A. 13; *Snyder's Estate,* 279 Pa. 63, 123 A. 663; *Phillips's Estate,* 299 Pa. 415, 149 A. 719; *Olshefski's Estate,* 337 Pa. 420, 11 A. 2d 487; *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139.

Contestants also proved that testatrix became bedfast in the middle of May 1944 and that thereafter she was cared for by a police sergeant and was finally declared a weak-minded person on June 6, 1944. She was then removed to a nursing home.

It has been repeatedly held that an adjudication of weak-mindedness or of incompetency or of insanity does not prove lack of testamentary capacity or nullify a will signed prior thereto or even signed on the same day: *Taylor's Estate,* 316 Pa. 557, 175 A. 540; *Mulholland's Estate,* 217 Pa. 65, 66 A. 150; *Brennan's Estate,* 312 Pa. 335, 168 A. 25.

Moreover, we agree with the Auditing Judge that even if the decedent lacked testamentary capacity on March 25, 1944, when she executed the fourth codicil to her will—which never took effect because her original executor survived her—this could not affect the testamentary disposition of the decedent's estate by her will in 1936 and did not warrant an issue devisavit vel non.

Decree affirmed at the cost of the appellants.