Johnson Will.

126

Argued January 9, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Samuel Lichtenfeld,* for appellant.

*Truman D. Wade,* with him *Wade, Wade & Wade,* for appellee.

OPINION BY MR. JUSTICE BELL, April 1, 1952:

This is a will contest which presents a narrow question: Is the evidence concerning decedent's alleged delusions sufficient to entitle contestant to an issue devisavit vel non?

James A. Johnson, an illiterate colored man, died on September 30, 1948 at the approximate age of 84. Ten of his twelve children were living at the time of his death. Johnson went alone to his attorney's office and discussed with him in detail the proposed contents of his last will. The will was forthwith prepared by decedent's attorney; it was executed by a mark on August 6, 1947; and proved by the attorney and the subscribing witnesses. In his will he left two houses and their furniture to Edna Allison, who was an acquaintance and a white woman, if she survived him; otherwise they became a part of his residuary estate.

The residue of his estate, the value of which was undisclosed, was left to seven (of his ten) named children. About eight months prior to this will he had made another will with the same, or substantially the same provisions for Edna Allison. The testator was suffering from senile dementia, from occasional loss of memory and from what appellant called a mental disturbance pertaining to sex.

The Orphans' Court judge who heard the evidence found that the testator possessed ample mental capacity to make a valid will; and there was no evidence of undue influence.

Appellant in his printed argument says: "This is not a case of general incapacity to make a will, but of a particular delusion which improperly influenced the decedent's testamentary dispostion . . ." The particular delusion in this case is alleged to be that the testator belived that Edna Allison was coming to keep house for him when the colored man for whom she was then working died; and that he, the testator, had a mental disturbance pertaining to sex.

Eccentric wills are made sometimes by eccentric people, but that is not sufficient of itself to invalidate them. It is natural that children should want and expect to inherit their parents' property and will be greatly disappointed if the parent leaves a substantial part of his estate to others. But it is and always has been the law of Pennsylvania that every individual may leave his property by will to any person, or to any charity, or for any lawful purpose he desires, unless he lacked mental capacity, or the will was obtained by forgery or fraud or undue influence, or was the product of a so-called insane delusion. While it is difficult for many people to understand how or why a man is permitted to make a strange. or unusual or an eccentric bequest, especially if he has children or close relatives

living, we must remember that under the law of Pennsylvania " 'a man's prejudices are a part of his liberty. He has a right to the control of his property while living and may bestow it as he sees fit' at his death: McCown v. Fraser, 327 Pa. 561, 192 A. 674; Cauffman v. Long, 82 Pa. 72." " ' "Old age, sickness, distress, debility of body, peculiar beliefs, and opinions, incapacity to do business, partial failure of memory, neither prove nor raise a presumption of incapacity." ' ": *Higbee Will*, 365 Pa. 381, 384, 75 A. 2d 599.

The hearing Judge made the following findings of fact which were supported by the overwhelming evidence: ". . . This man was entirely capable of transacting business, knew what estate he owned and his relatives, negotiated for and created a mortgage on real estate owned by him to enable one of his daughters to purchase a house, taking a mortgage on said latter mentioned property, all within ten months of his execution of the will in question, and made known to his attorney the terms of a written agreement in regard to a water right entered into by and between him and his grandson about nine months after the execution of said will. In short, both before and after as well as at the time he made said will Johnson was mentally alert and, in the words of one witness, a 'very capable and astute man.' The . . . unconvincing testimony of the doctor suggests no conclusion to the contrary, nor does the testimony as to decedent's harping on sex and white women."

Where a will is drawn by decedent's lawyer and proved by him and the subscribing witnesses, the burden of proving testamentary incapacity is upon the contestants, and "that burden can be sustained only by clear and strong or compelling evidence of lack of testamentary capacity, . . . Sturgeon Will, 357 Pa. 75, 53 A. 2d 139.": *Higbee Will*, 365 Pa. 381, 382, 75 A. 2d

599. Similarly, the burden of proving an insane delusion is on him who asserts it: *Leedom Estate,* 347 Pa. 180, 32 A. 2d 3.

What is an insane delusion?

In *Leedom Estate,* supra, Mr. Justice (now Chief Justice) Drew said (pages 181-182) : "It is well settled that 'A delusion which will render invalid a will executed as the direct result of it is an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist and which no rational person, in the absence of evidence, would believe to exist:' Alexander's Estate, 246 Pa. 58, 62. See also McGovran's Estate, 185 Pa. 203. The following statement pertaining to the law concerning such delusions was approved by this Court, in Thomas v. Carter, 170 Pa. 272, 282: 'A man may be of sound mind in regard to his dealings in general, but he may be under an insane delusion, and whenever it appears that the will was the direct offspring of the partial insanity or monomania under which the testator was laboring at the very time the will was made, that it was the moving cause of the disposition, and if it had not existed the will would have been different, it ought to be considered no will, although the general capacity of the testator may be unimpeached.' "

The hearing Judge well said: ". . . it cannot be found that decedent's belief that Edna Allison was coming to keep house for him was an insane delusion or a mere figment of his imagination. Regardless of whether such an arrangement was unusual or out of the ordinary, the fact remains, according to the testimony of the contestants, that Edna Allison was keeping house for one colored man, that she came to decedent's house, and that, from what she had told decedent, he believed, with reason, that when her then employer died she would come to keep house for him, the decedent."

The evidence to support the Judge's findings and to sustain the refusal of an issue was very strong and convincing.

We may aptly repeat what we said in *Zakatoff Will*, 367 Pa. 542, 552, 81 A. 2d 430: ". . . The chancellor's refusal of an issue devisavit vel non will not be reversed by an appellate court unless there was an abuse of discretion: DeLaurentiis's Estate, 323 Pa. 70, 78, 186 A. 359; Dible's Estate, 316 Pa. 553, 554, 175 A. 538; Lare Will, 352 Pa. 323, 330, 42 A. 2d 801. Not only was there no abuse of discretion by the [hearing judge], but the facts and circumstances adduced by contestant were so [unconvincing] that it would have been a . . . miscarriage of justice to hold that contestant's evidence raised a substantial or material dispute of fact, which is requisite for the granting of an issue: Higbee Will, 365 Pa. 381, 75 A. 2d 599; Sturgeon Will, 357 Pa. 75, 53 A. 2d 139; DeLaurentiis's Estate, 323 Pa. 70, 186 A. 359; Lare Will, 352 Pa. 323, 42 A. 2d 801; Ross Will, 355 Pa. 112, 49 A. 2d 392."

The order of the court below is affirmed at the cost of the appellant.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The testator in this case, James A. Johnson, was 83 years of age when he drew his will. He died one year later. He devised to one Edna Allison, to all intents and purposes a stranger, certain real estate in assumed payment of services she was to render in the future and which she never did render. Because of this bizarre devise, plus other strange habits in his latter life, the will was contested and the matter came before the Orphans' Court of Chester County for a determination as to "whether the testator was mentally incapacitated to make a will at the time of the execution thereof."

Johnson's personal physician testified: "Mr. Johnson had a general mental deterioration as far back as 1935 when he was working for Webster, 1934 or 1935 when he was working for Webster. He had senile psychosis and senile dementia."

I believe, after reading the testimony in the case that there was substantial dispute in the record as to whether Johnson possessed testamentary capacity to make a will. In *Lewis Will*, 364 Pa. 225, 232 72 A. 2d 80, this Court, speaking through Mr. Justice HORACE STERN, said: "The rule is firmly established that the judge of the orphans' court conducting the hearing on appeal for the granting of an issue d.v.n. is not to constitute himself the jury, that is, to decide the case as he would if acting in the capacity of an ultimate fact-finding tribunal; his function is to determine whether there is a substantial dispute upon a material matter of fact, and such a dispute exists if a verdict that might be reached by a jury, even if at variance with his own opinion, would not have to be set aside as judicially untenable because contrary to the weight of the evidence."

There is no doubt that if the issue of testamentary capacity were submitted to a jury and the jury found that Johnson was lacking in testamentary capacity, that verdict could not be set aside as judicially untenable because contrary to the weight of the evidence.

I would affirm the exceptions filed by counsel for the appellant to the Order entered by the Orphans' Court of Chester County.