## Fox Estate

A. *David M. Speers*, for accountant.

*Alfred D. Whitman*, for *Harrington Adams*, Acting Attorney General, for Commonwealth.

LEFEVER, J., March 5, 1959.—Under date of March 29, 1923, Sarah C. Fox, settlor, executed a deed of

trust wherein she exercised a power of appointment, invested in her by the will of Lucretia Dunn, dated May 17, 1906, and codicils thereto, to dispose of her estate to "such worthy charities as she . . . may select, in my name." The deed of trust appointed The Pennsylvania Company for Insurances on Lives and Granting Annuities, now The First Pennsylvania Banking and Trust Company, as trustee.

The deed of trust directed the trustee to pay the net income:

". . . unto SCHOFIELD NORMAL AND INDUSTRIAL SCHOOL, an educational and charitable corporation now located at Aiken, South Carolina, to be used for student scholarships in said School as determined by the Board of Trustees thereof. In case said School shall be consolidated or merged with any other institution doing a like work, or shall at any time be placed under State or County supervision and continued as an educational institution for Negroes, said income shall be paid to the Treasurer or other proper officer to be used exclusively for the education of Negroes. In case said School shall cease to provide instruction to Negroes, or be dissolved, laid down or discontinued, said income shall be paid to the Treasurer for the time being of PENNSYLVANIA ABOLITION SOCIETY, to be used by it in educational work among the Negroes of the South. In case Pennsylvania Abolition Society shall be dissolved, laid down or discontinued, said income shall be used for educational work among Negroes as the Trustee shall in its uncontrolled discretion deem best."

At the time the deed of trust was executed, Schofield Normal and Industrial School was an educational institution for Negroes only. By letter dated February 16, 1956, copy of which is attached to the statement of proposed distribution, A. J. Rutland, Superintendent

of the School District of Aiken County, advised the attorney for the accountant that: "The School District of Aiken County took over the operation of Schofield Normal and Industrial School as Schofield High School July 1, 1950. The school is being operated as an educational institution (high school) for Negroes only."

It is stated in the statement of proposed distribution that: "The reason or purpose of the filing of the account is that the Schofield Normal and Industrial School has become a part of the public school system of Aiken County, South Carolina."

The question presented to the court is what disposition should be made of the principal and income of the trust. The accountant's position with regard to this, as set forth in the statement of proposed distribution, is as follows:

"Since the school has in fact been 'placed under State or County supervision and continued as an educational institution for Negroes', the literal provisions of the Deed of Trust require that the income be paid to the Treasurer of the school district 'to be used exclusively for the education of Negroes'. The accountant believes that under the decisions of the United States Supreme Court in Brown v. Board of Education, 347 U. S. 483, and Pennsylvania et al. v. Board of Directors of City Trusts of the City of Philadelphia, 353 U. S. 230, it would not be lawful for a public school to administer funds solely for the benefit of members of one race. . . . The accountant suggests that the Settlor's intention to provide funds for the education of Negroes in the South can best be accomplished by awarding the entire principal of the trust to the Pennsylvania Abolition Society. . . ."

Notice of the audit and the position taken by the accountant was given to The School District of Aiken County, Aiken, S. C., Mr. James H. Young, President,

Board of Trustees of Schofield Normal and Industrial School, the Attorney General of the Commonwealth of Pennsylvania, the Attorney General of the State of South Carolina and the treasurer of The Pennsylvania Abolition Society. Copies of the notices are attached hereto. These notices fully set forth the question presented by the accountant and conclude:

"This is to advise you that Rule 63.1 of the Philadelphia Orphans' Court provides in part that this notice to you shall contain a statement that if you do not agree with the Trustee's interpretation of the trust and with the recommendations, you must appear at the audit in person or by counsel to present your contentions, under penalty for failure to appear that the Court will assume that you agree with the Trustee's interpretations and recommendations."

No one appeared at the audit in person or by counsel to voice objection to the recommendations of the accountant.

The deed of trust provides alternative gifts of the income from the trust upon the occurrence of stated contingencies. The express language of the first alternative is: "In case said school shall be consolidated or merged with any other institution doing a like work, or shall at any time be placed under State or County supervision and be continued as an educational institution for Negroes, said income shall be paid to the Treasurer or other proper officer to be used exclusively for the education of Negroes." The Schofield Normal and Industrial School has in fact been "placed under State or County supervision and continued as an educational institution for Negroes." This contingency having occurred, the alternate provision would normally take effect. However, the alternate provision is that "said income shall be paid to the Treasurer or other proper officer to be used exclusively for the education of

Negroes." This is a direction from settlor for the trustee to distribute the income from this trust to an employe or officer of a municipality, viz., its treasurer, "for the education of Negroes". Such action is prohibited under the recent ruling of the United States Supreme Court in Pennsylvania v. Board of Directors of City Trusts of the City of Philadelphia, 353 U. S. 230.

In that case, Stephen Girard provided in his will that Girard College be established for "poor white male orphans". Two Negro children applied to the Board of Directors of City Trusts for admission to Girard College. They were refused admission solely because they were not "white". This action of the Board of Directors of City Trusts was sustained by hearing Judge Bolger, by the unanimous opinion of this court en banc, and by the Supreme Court of Pennsylvania. However, the United States Supreme Court reversed on the ground that a municipality, even though acting in a fiduciary or representative capacity, is forbidden by the Fourteenth Amendment to the United States Constitution from practicing discrimination upon the basis of race. The United States Supreme Court stated, on page 231:

"The Board which operates Girard College is an agency of the State of Pennsylvania. Therefore, even though the Board was acting as a trustee, its refusal to admit Foust and Felder to the college because they were Negroes was discrimination by the State. Such discrimination is forbidden by the Fourteenth Amendment: Brown v. Board of Education, 347 U. S. 483."

The cited case is directly in point. There is no difference between the City of Philadelphia, acting through the Board of Directors of City Trusts, and the County of Aiken, acting through its treasurer. In the instant case the gift is for the exclusive benefit of Ne-

groes. In the cited case the gift was for the exclusive benefit of Caucasians. However, the interdiction of the United States Supreme Court was addressed to discrimination against a particular race. It is just as improper for a municipality in a representative capacity to operate educational facilities solely for the benefit of Negro students, thereby excluding white children, as it was in the Girard College case for the City of Philadelphia, acting through the Board of Directors of City Trusts, to operate Girard College exclusively for white orphans, thereby excluding the Negro applicants. Hence, the income from this trust cannot be distributed to the treasurer of the School District of Aiken, S. C., a municipality, for the exclusive education of Negro students. The operation of a segregated public school for Negro students, like the operation of a segregated public school for white students, is forbidden: Brown v. Board of Education, 347 U. S. 483. Such segregated public schools must be eventually supplanted by integrated schools: Brown v. Board of Education, supra.

The case before the court, however, is not a case of segregation or integration between Negroes and Caucasians. Like the Girard College case, the instant case involves only the interpretation of an instrument creating a perpetual trust for charity.

As was stated by this court in Girard Estate, 4 D. & C. 2d 671, at page 709:

"One of the most treasured rights of a free man in a free civilization is the right to dispose of his property at death as he sees fit. No right is more solemnly assured to him by law. This right is so sacred that a testator's directions will be enforced even though repugnant to the general views of society: Highbee's Estate, 365 Pa. 381. A testator is entitled to his idiosyncracies, and even to his prejudices, as part of his liberty: Cauffman v. Long, 82 Pa. 72. See McCown et al v. Fraser et al, 327 Pa. 561, 564."

The United States Supreme Court sustained the decision of this court that the Girard College case was one of will interpretation: Commonwealth of Pennsylvania, City of Philadelphia, Richardson Dilworth, Mayor of the City of Philadelphia et al., Appellants, v. The Board of Directors of City Trusts of the City of Philadelphia, and thirteen Substituted Trustees of the Estate of Stephen Girard, deceased, 357 U. S. 570. There, the United States Supreme Court sustained the action of this court in removing the Board of Directors of City Trusts as the trustee, and appointing 13 individuals as substituted trustees, to administer the trust and operate Girard College for "poor white male orphans", as directed in Girard's will.

This doctrine is no less applicable to the donee's exercise of a power of appointment under a will by deed of trust providing that the trust income shall be used solely for the education of Negro students. The proper charitable intention of the donee of the power must be carried out.

It appears from the foregoing that the first alternative gift is inoperative because it violates the Fourteenth Amendment of the United States Constitution. The auditing judge must, therefore, consider the next alternative, viz., "said income shall be paid to the Treasurer for the time being of PENNSYLVANIA ABOLITION SOCIETY, to be used by it in educational work among the Negroes of the South."

It is noteworthy that the Pennsylvania Abolition Society is one of the oldest corporations in this Commonwealth, that it was established in 1789, the year of the adoption of the United States Constitution and that Pennsylvania's outstanding citizen, the distinguished statesman, learned scholar and educator, Benjamin Franklin, was one of its founders and its first President. This society, since its origin, has been dedi-

cated to the alleviation of the sufferings and the education of members of the Negro race. It is particularly fitting that this society should be entrusted with the continuance of the laudable plan of the donee of the power to aid in the education of Negroes in the South.

Accountant requests that the trust principal be awarded to the Pennsylvania Abolition Society. However, the express language of the deed of trust specifies that the income only shall be distributed to it. The auditing judge is aware of the fact that the principal of the trust is only $2,177.67. However, the size of the trust corpus is substantially the same now as at the inception of the trust in 1923. Both settlor and trustee were aware of its size when the trust was created. No reason appears for the termination of the trust. Certainly, the fact that the trust principal is small is in itself no basis for the termination of a trust by court decree. Accountant has properly agreed to continue to serve as trustee, if so directed. The auditing judge so directs. Accordingly, the terminal commission to the accountant of $100 will be stricken from the account.

The Attorney General of the Commonwealth of Pennsylvania has entered an appearance in this case. He has no objection to the account and approves the awards herein contained. In view of said position of the Attorney General and the fact that no one appeared at the audit to object to the account or to the award proposed by accountant, the account will be confirmed. . . .; and the principal will be awarded back to the trustee for operation of the trust as herein directed.

And now, to wit, March 5, 1959, the account is confirmed nisi.