## Graves Trust

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Charles Morris Hamilton,* for exceptants.

*Charles D. Smeltzer* and *Dorsey F. Boston,* contra.

KLEIN, P. J., June 25, 1965. — Josephine Graves, the settlor, entered the Evangelical Home for the Aged of the Evangelical Church, now known as Evangelical Manor, in December 1950, where she remained until her death 13 years later on March 5, 1964. When she entered, the home agreed to maintain her for the rest of her life, in consideration for the payment by her to the home of $13,000. She retained for herself considerable other assets which she possessed. The negotiations with the home were conducted by settlor's lawyer, John W. Frazier, 3rd.

Several months later, on March 16, 1951, settlor executed a revocable deed of trust, prepared by Mr. Frazier, under the terms of which she received the net income for life and other benefits not necessary to

recite here. The deed provided that upon her death $400 was to be paid to the West Laurel Hill Cemetery, $500 was to be paid to each of four relatives and the balance of the principal, together with any accumulated or accrued income remaining undistributed, went to Mr. Frazier.

On January 17, 1959, the settlor executed an amendment to the deed of trust wherein she revoked the four gifts of $500 to the relatives and the gift of the remainder to Mr. Frazier and gave the entire corpus of the trust to the home.

Mr. Frazier and the pecuniary legatees challenged the validity of the amendment at the audit of the trustee's account, alleging that it was obtained by fraud and undue influence.

We are in full agreement with the auditing judge that there is no merit to Mr. Frazier's contention. The disposition of the residue, made in the amendment, to the worthy charity which ministered to her needs and cared for her in her last years is natural under the circumstances of this case. On the other hand, the gift to Mr. Frazier in the original deed appears to be subject to question in view of the casual relationship which existed between them, as revealed by the record in these proceedings and the undisputed facts that he was her lawyer, the scrivener of the deed, and clearly stood in a confidential relationship to her. It is also interesting to note that, in a will prepared by Mr. Frazier for the settlor in 1949, two years prior to the original deed, the residue was left, not to him, or any other individual, but to the Salvation Army, another charity.

There is a vast difference between permissible influence and undue influence sufficient to nullify a disposition of property. In Olshefski's Estate, 337 Pa. 420, 424, the court said: "Kindly care and solicitous attention do not amount to undue influence ... Legitimate family and social relations are not prohibited

though provisions of a will are thereby influenced and affected; such results are their natural and proper products: Dean v. Negley, 41 Pa. 312." See also Brennan's Estate, 312 Pa. 335 (1933).

The issues presented for decision in the present case are essentially factual in nature. It is well settled that the findings of fact by an auditing judge, who has personally seen and heard the witnesses, like the verdict of a jury, will not be disturbed unless clear error is shown: Pavlinko Estate, 399 Pa. 536, (1960); Collings Estate, 405 Pa. 280 (1961); Drejko Estate, 34 D. & C. 2d 233 (1964).

There is a complete dearth of credible testimony in this case which would indicate in the slightest degree that anyone connected with the Evangelical Home improperly influenced the settlor to amend the deed of trust and to substitute the home for Mr. Frazier as the recipient of the principal of her estate. In our opinion, Judge Bolger made no error in reaching his conclusion. On the contrary, we all would have reached the same result if the decision were ours.

It is to be noted that these proceedings are not in the nature of a *devisavit vel non*, but an attack on the validity of an inter vivos instrument based on alleged fraud and undue influence in procuring its execution. In view of the limited jurisdiction of the orphans' court, some doubt exists as to the authority of the court to reform or set aside such an inter vivos instrument, when submitted to the court as an independent action. There is no question, however, that when an account has been filed, as was done in this case, the orphans' court has full and complete jurisdiction of the subject matter of the dispute involving the validity of the amendment as this is incidental to the audit of the trustee's account. See La Rocca Trust, 411 Pa. 633 (1963); Mellinger's Estate, 334 Pa. 180 (1939); Fisher Estate, 26 D. & C. 2d 351 (1962). See also Fiduciary Review, August 1963.

Through an inadvertence the matter was incorrectly captioned in the adjudication. It should be as hereinabove written. The clerk is directed to conform the record accordingly.

The exceptions are dismissed and the adjudication is confirmed absolutely.