Spencer S. GREENWOOD, John H. Greenwood, Henry B. Greenwood, Lucille L. Maddox and John F. Greenwood, Plaintiffs,

**v.**

Benjamin GREENWOOD, William Davis and Fidelity-Philadelphia Trust Co., Defendants.

Civ. A. No. 12930.

United States District Court
E. D. Pennsylvania.

Nov. 1, 1954.

George E. Beechwood, Conlen, La-Brum & Beechwood, Philadelphia, Pa., for plaintiffs.

Albert C. Brand, M. H. Goldstein, Bernard L. Barkan, Philadelphia, Pa., for defendants.

CLARY, District Judge.

■ This is an action to set aside an irrevocable Deed of Trust by which Emma E. Vanatta, now deceased, the settlor, transferred to the Fidelity-Philadelphia Trust Company, trustee, all of her property under certain terms and conditions which, except for certain gifts set out hereinafter, upon her decease, was to be equally divided by the terms of the trust between her brother, Benjamin Greenwood, and her nephew, William Davis, two of the defendants in this action. The third defendant, Fidelity-Philadelphia Trust Company, is a necessary but nominal party. The action is brought by the surviving next of kin, each of whom were given by the trust instrument $500, out of a total estate of approximately $40,000. The grounds advanced for setting aside this irrevocable Deed of Trust are undue influence and lack of capacity.

The trial, after several preliminary hearings and a pre-trial conference, was commenced on Tuesday, January 19, 1954 and continued for five days, including Saturday, January 23, 1954, the jury being charged at approximately six o'clock on Saturday evening and the verdict being returned at midnight of that night. The verdict was rendered in the form of interrogatories, answering certain factual questions submitted to the jury by the trial judge, the answers to which interrogatories the trial judge felt would be conclusive of the issues involved, though this was only an advisory jury. The necessity for so conducting the trial was the pressure of business of the court calendar and the future court assignments of the trial judge. During the following week, on January 29, 1954, without making spe-

cial findings of fact and conclusions of law, the trial judge adopted the findings of the jury as the findings of the court and entered judgment in favor of the defendants. On the same day, although the time element in the filing does not appear, plaintiffs filed their motion to set aside answers to the interrogatories. However, the decree entering judgment in favor of the defendants appears first on the docket entries of this court. No action was taken thereafter until February 15, 1954, when plaintiffs filed their motion (dated February 12, 1954) to set aside the decree and for a new trial.

A further consideration of the case upon argument and briefs respecting the motion for a new trial has convinced the trial judge that the least the court should do is to order a new trial in the case, if it now had that power. The case as presented in the record is not an appealing one. Briefly summarized it shows a childless widow in her seventies who, after her husband's death in 1939, lived alone in their former home in North Philadelphia. She had only two relatives in this city, Benjamin Greenwood, a brother a few years her junior, and William Davis, a nephew. Other living relatives included three nephews and a niece who resided in Maryland and New Jersey, and a brother who had for many years lived in Florida. These relatives are the plaintiffs in this action. (She also had a niece Reba Grice, her only remaining relative, who did not inherit anything and is not a party to this action.) William Davis, the nephew, since the death of Mrs. Vanatta's husband, had been attentive to and solicitous for her welfare. The brother, Benjamin Greenwood, did not maintain the same degree of contact but visited her once or twice a month and apparently the relations between them were excellent. In 1944 the settlor executed a will by which she left her entire estate to William Davis, nephew. By 1948 she had become increasingly infirm and, in 1948, at her suggestion or that of her nephew, her bank accounts which then contained the

majority of her estate totalling about $40,000 were transferred to her and Davis jointly under a standard banking contract which included the right of survivorship. At about the same time she showed Davis her will, the first knowledge he had of it. There is no doubt that Davis was at all times scrupulously honest in handling the funds going into and out of the accounts. Early in November of 1948, Benjamin Greenwood on a visit to Mrs. Vanatta noticed a bank deposit slip showing Davis' and Mrs. Vanatta's joint ownership of the savings account. He said nothing to her at the time but shortly afterwards consulted M. H. Goldstein, Esquire, attorney for his labor union. Thereafter Mr. Goldstein attempted to learn some details of Mrs. Vanatta's affairs from the bank but was refused information without authorization of the depositor. He thereupon, through his associate, Bernard L. Barkan, Esquire, had prepared a petition for the appointment of a guardian of an incompetent person. In connection with this he wrote to Davis requesting that the latter call for an interview. Davis did not answer the letter but instead consulted his attorney Albert C. Brand, Esquire, with reference to his own interests in the matter. Greenwood later called upon the settlor and he or she suggested that she see an attorney in respect of her matters and he suggested his attorney Mr. Goldstein. Davis also called upon her at a separate time and she then expressed a desire to make changes in the distribution of her property and he or she suggested an attorney and Davis suggested his attorney Mr. Brand. A few days later Mr. Brand called upon Mrs. Vanatta. Still a little later Mr. Goldstein or Mr. Barkan arranged for two thoroughly competent mental specialists to examine Mrs. Vanatta in her home. This they did and submitted individual reports, each stating that in his opinion Mrs. Vanatta was in an advanced stage of senility and was incapable of handling her affairs. Thereafter the three attorneys seemed to take full charge of negotiations. Mr. Goldstein suggested a guardian and Mr. Brand opposed. Mr. Brand suggested that he and Mr. Barkan together visit Mrs. Vanatta to determine her mental condition. During that visit the subject of setting up a trust was mentioned by the attorneys. This idea seemed to appeal to her and she agreed to entertain such a disposition of her property, if the Fidelity-Philadelphia Trust Company, trustee, a reputable banking institution with which she had previously had satisfactory dealings, would consent to act as trustee. Mr. Brand and Mr. Barkan then approached the trust company and the trust company forwarded its standard trust agreement to Mr. Goldstein's office. After negotiations between the attorneys a final agreement was drafted including a $500 award to each of the plaintiffs and the residue to be divided equally between her brother Benjamin and her nephew Davis, the basis for that distribution being a report by Greenwood to Goldstein that such a distribution would carry out her wishes.

The chronological sequence was as follows: On December 9, 1948, she was examined by the doctors and their testimony, in the opinion of the court, determined that she was incapable of handling her affairs. The first visit of the attorneys to Mrs. Vanatta was early in January. The discussion of the proposed deed of trust covered several weeks and the deed was finally executed on February 5, 1949. The trust company refused to execute the trust agreement until after a further examination of the settlor by Dr. B. J. Alpers, which was held on February 24, at which time Dr. Alpers found her to be in such a mental state as to be aware of her property and of what she was doing. No new deed was executed on that date, the one executed February 5 being the deed in question in this action. Benjamin Greenwood paid Goldstein $500 for his services in the matter. Davis paid Brand, though the record does not disclose the amount. Mrs. Vanatta paid Goldstein nothing and

the record does not indicate that Mrs. Vanatta paid Brand anything. Unfortunately, at the time of trial Mr. Brand was ill and could not appear. The jury found as a fact that both Barkan and Brand at the time of the execution of the document and in the negotiations leading thereto were representing Mrs. Vanatta and their respective clients, defendants in this action.

■■■ It is not necessary nor would it serve any useful purpose at this juncture to discuss generally the law of Pennsylvania respecting the type of testamentary disposition of property here involved. Beginning with Cauffman v. Long, 1876, 82 Pa. 72, it has been the law of Pennsylvania that every individual may make testamentary disposition of his property for any lawful purpose he desires unless that person lacked mental capacity or the will was obtained by forgery, fraud or undue influence or was the product of a so-called "insane delusion". Johnson's Will, 1952, 370 Pa. 125, 87 A.2d 188. In re Williams' Estate, 1930, 299 Pa. 440, at page 446, 149 A. 728, states that in any contest of a testamentary disposition of a decedent's property, once it is shown that a confidential relationship existed between a person of weakened mentality and the proponent who obtained the execution of the document, the burden of establishing perfect fairness in the execution of the document is thrown upon the confidential advisor and, if no such proof of perfect fairness is established, the court will treat the case as one of constructive fraud. Mr. Justice Bell in his opinion in Williams v. McCarroll, 1953, 374 Pa. 281, at page 295, 97 A.2d 14, sets out the general attributes of a confidential relationship. See also the decision of Judge Lefever in Bhare Estate, 1954, 88 Pa.Dist. & Co. 191.

■ The jury in this case found that neither Davis nor Greenwood acted in a fiduciary capacity with respect to Mrs. Vanatta or the disposition of her estate. Upon mature consideration the court would not agree with that finding. Mrs. Vanatta had no individual counsel and it would appear that minimal legal sensitiveness would have indicated to the parties involved that she not only did not have but should have had her own individual counsel charged with the protection of her individual rights. It does not appear important at this phase of the inquiry that had she had her own counsel the same result might have been obtained. While plaintiffs, as distant, and on post mortem, solicitous, relatives, do not have a case which would elicit much sympathy from either court or jury, the fact remains that Mrs. Vanatta's individual rights were unprotected and that the ultimate result was brought about by the actions of attorneys retained specifically by the defendants to bring the property of, to say the least a relative of deteriorating mentality, into their ownership after her death.

■ As indicated at the outset, however, the court must conclude that at this date it is without power to act in this case. Rule 59(b) of the Federal Rules of Civil Procedure, 28 U.S.C., requires that a motion for a new trial be served no later than ten days after the entry of a judgment. Rule 59(c) grants the court the power to order a new trial upon its own motion *but only* if it acts within ten days after the entry of a judgment. Rule 6(b) prohibits the court from extending the time in either 59(b) or (d). The prohibition in Rule 6(b) is absolute. This is clear from the language of the opinion in Safeway Stores v. Coe, 1943, 78 U.S.App.D.C. 19, 136 F.2d 771, 775, 148 A.L.R. 782, which holds as follows:

"We think that the purpose of Rule 6(b), which forbids the court to enlarge the time for taking any action under Rule 59, was to divest the court of jurisdiction to entertain a motion of this kind filed out of time."

In Kanatser v. Chrysler Corp., 10 Cir., 1952, 199 F.2d 610, a case where a timely motion had been filed for a new trial assigning certain grounds and the trial

judge had granted a new trial on grounds of his own and not those assigned in the motion, on a writ of certiorari to the Circuit Court of Appeals, the court, at page 615, said:

"Here the trial court purported to grant the motion for new trial more than six months after the entry of the judgment on a ground not asserted in the motion. In so doing, he acted on his own initiative and beyond his jurisdiction."

To the same effect is the case of Fine v. Paramount Pictures, Inc., 7 Cir., 1950, 181 F.2d 300.

It would appear, therefore, that notwithstanding the equities of the situation as they presently appear, the trial court by failing to act on its own motion and granting a new trial within ten days from January 29, 1954, coupled with the failure of the plaintiffs herein to file a motion for a new trial within the allotted ten days after judgment, now has no power to afford plaintiffs any relief.

An order, therefore, will be entered denying plaintiffs' motions.