Molden Will.

Argued November 12, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Symington P. Landreth,* with him *Frederick Ely Smith, Bertram P. Rambo, Ross & Smith,* and *Rambo, Knox & Landreth,* for appellants.

*John Leslie Kilcoyne,* for appellee.

OPINION BY MR. JUSTICE BELL, January 17, 1957:

Kathleen Molden, also known as Katie Molden, wrote and duly executed her last will dated January 28, 1948.  It contained some additions and alterations,

but it is unchallenged and unquestioned (a) that she devised (and bequeathed) her home, 542 Bath Street, and its contents, and (b) that she bequeathed her undertaking business known as Molden Funeral Service, and (c) that she bequeathed all the balance of her estate to her son, George Molden, who was obviously and undoubtedly the primary object of her bounty. Her will was witnessed by two witnesses, but neither of them read the will or noticed whether it contained any alterations. There was no proof who made the changes which the hearing Judge found were made in two small legacies, although suspicion pointed to George Molden, the residuary legatee.

This is the second phase of a bitter will contest between the proponent, George Molden, who was a specific devisee and legatee, as well as the residuary legatee under her will, and testatrix's other children, Harry Molden, Emma L. Fischer, and Walter Molden, who are pecuniary legatees and contestants. The learned Court below (1) refused an issue, and (2) held that the interlineations, additions and erasures did not avoid or nullify the will, and (3) restored the legacies to Harry and Emma (two contestants) in the (larger) amount which their handwriting expert believed was the original amount inserted by the testatrix, and (4) resolved the ambiguity in Walter's legacy, in his favor. Contestants nevertheless appealed from the Court's Decree contending that it must be *presumed* that George made the alterations in the aforesaid *two* legacies and consequently must forfeit everything which testatrix specifically and unquestionably gave him in her will.*

Mrs. Molden's will, written in her own hand, reads as follows:

---

\* We assume by analogy to the Slayers Act of 1941.

Bristol Pa Jan 26th 1948

Last will of Kathleen Molden also known as Katie Molden at my home 542 Bath St Bristol Pa Bucks Co

I Kathleen Molden also known as Katie Molden being of sound and disposing mind memory and understanding I do freely devise and bequeath to my Son George Molden Sr. my home 542 Bath St and contents also the Chapel 133 Otter St and everything pertaining to the Undertaking Business Cars Garages Morgues and all Instruments without Bonds known as Molden Funeral Service

To my Son Harry Molden I give 25-00 dollars as I have given him some in my life time;

To my Daughter Emma L. Fischer I give 25-00 as I have given her also some in my life time

To my Son Walter Molden I give 2000 dollars as I have given him also in my life time

To my Grandson I give 13-00 George Molden Jr.

To my Grand Daughter I give 15-00 Helen Bourne

I hereby appoint my Son George Molden the Executor of my Estate and I direct that he be not required to enter any Bond or Security whatever after all expenses are paid the Balance goes to my Son George Molden

Signed by Kathleen Molden also known as Katie Molden

Witness
Joseph N Barlow
1419 ... Ave Bristol Pa
Charles. On 59 Schumacher ... Bristol, Pa.

Mr. Leon W. Melcher, a handwriting expert, testified in behalf of the contestants. He testified that the words "and contents" which were inserted *above the line* and appear after the devise of "my home 542 Bath Street" were added by testatrix *in her own handwriting*. There is a presumption that additions and alterations which are made in the handwriting of the testatrix above her signature were made prior to the execution of the will: *Hickman's Estate*, 308 Pa. 230; 162

A. 168; *Gongaware v. Donehoo*, 255 Pa. 502, 100 A.
264; *Morrow's Estate (No. 1)*, 204 Pa. 479, 54 A. 313;
*Wikoff's Appeal*, 15 Pa. 281; Hunter Orphans' Court
Commonplace Book, Vol. 2, Revocation of Wills, §6
(d), p. 1191.

There was no evidence by either contestants or pro-
ponents to overcome this presumption, and the lower
Court correctly decided that "the contents" of testa-
trix's home were clearly and validly bequeathed to
George Molden. This conclusion is not challenged by
the contestants.

The next three bequests create the trouble. Testa-
trix next provided:

$$\underline{00}$$

"To my son Harry Molden I give $2500,xx dollars
as I have given him some in my life time,"

The lower Court, in a very able opinion, said with
respect to this bequest: "Immediately before and par-
tially including the letter 'd' in the word 'dollars'
appears an obvious erasure, the abrasion in part ex-
tending entirely through the paper. Within this
erased space appeared the comma and the two zeros
over the two xx's. These markings, together with the
dollar mark and the figure '2' at the beginning of the
numeral, *appear** to be written in different color ink
than the body of the document. The other figures (500)
would seem to be in the original ink."

The "2" is awkward and is out of line with the
figures which follow it. If we assume that the "2" was
added by the testatrix or by someone else *after* the will
was written, it would appear to us from a visual ex-
amination of the original will aided by a magnifying
glass, that the *original* gift was probably $500, not
$5000. However, the Court found, basing its opinion

---

* Italics throughout, ours.

on the testimony of Melcher, that the original gift was $5000. On this point, Melcher testified as follows:

"A. My conclusion was and is that it was originally written $5,000 and subsequently changed to $2,500 by the erasure of the last naught and by the interlineation of a dollar mark and a numeral '2' and a comma at the end and two naughts over a horizontal line under which there are two cross marks, all of which writings were added with a different pen and ink, and in my opinion by a different writer, *although I am not definite about the numeral '2'. I don't see anything* in that particular numeral that is distinctive enough *to enable me to identify it as the writing of any particular person.*" Based on this testimony, the lower Court restored the legacy to Harry Molden from $2500. to $5000.

Testatrix next provided:

$  00

"To my Daughter Emma L. Fischer I give 2500.xx as I have given her also some in my life time"

Melcher testified with respect to this bequest: "A. That in my opinion originally read 5,000, with the dollar mark in front and above the numeral '5'. The last naught has been erased and a period made where that erased naught was, followed by two naughts over a horizontal line under which there are two crosses, and the numeral '2' was interlined ahead of the '5' making it read $2,500.00/XX. Those added marks, *in my opinion,* are done with the same or similar pen and ink to those on the bequest to Harry Molden, and by the same person."

The "2" is awkward and no explanation was given and no attempt was made to explain the absence of the word "dollars" which appears in the similar gift to Harry Molden and Walter Molden. As to this bequest the lower Court said: "The period within the numeral is placed on an obvious erasure, likewise extending at

one small point entirely through the paper. The final figures, consisting of the two zeros, over the two xx's and the figure '2' at the beginning of the numeral, appear to be in a different color ink than the body of the instrument. The ink used in making the dollar mark located above the figure '2' and the other figures (*500*) is not obviously different from that in the original document."

Melcher further testified: "Q. And in the bequest to Emma Fischer, do you know who wrote the '2'? A. Emma Fischer '2'? Now, that figure '2' is similar to the one shown in the Harry Molden bequest, *but I can't identify them. This writer used at least two different styles of the numeral '2', as many other people do,* and neither one of them has any particular identifying characteristic. *I can't say who wrote it.*"

Nevertheless, the Court found, based upon Melcher's testimony, that the original gift to Emma L. Fischer was $5,000. and restored the $2,500. to $5,000.

Testatrix next provided:

$0000.

"To my Son Walter Molden I give 2000, dollars as I have given him also in my life time"

Melcher testified with respect to this gift as follows: "A. Yes. There the original writing was 2,000—no, I *think it was originally 200* and then immediately the last naught was changed to two naughts, because those inks coalesce in making it 2,000, but it was still illegible and over top of the last two naughts are two legible naughts made with that same greenish ink. Now, that is the way the thing was originally left, and then later on someone added a comma* after the 2,000, and above that a period* and in front of those original two green naughts added a dollar mark* *and two naughts* in the purple ink.* That dollar mark is not

---

* Since the 2000 dollars was not changed, it is very difficult to understand why any forger or anyone except the testatrix would make these useless additions and forgeries.

made in the style that is characteristic to this testatrix. It is made like the one in the Harry Molden bequest."

The Court said: "In this paragraph there are no obvious erasures, *and no significant ink differences are apparent to the naked eye* although some of the figures are heavier than others." The Court held that "The dollar mark and four zeros interlined above the numeral as so altered are . . . inoperative either as a substitution or as a revocation . . . . This bequest should therefore be probated in the amount of $2,000."

Testatrix then provided:

$ to

"To my Grandson I give 1500. George Molden, Jr."

$ to Bourne

"To my Grand Daughter I give 1500. Helen Boyne"

Counsel for contestants contended in the lower Court that the numeral "1" had been fraudulently added to each of these bequests. However, his handwriting expert did not support this position, so he abandoned it in this Court.

George Molden testified that when his mother gave him the envelope which contained the will it was sealed; that he never opened the envelope at any time; that he did not know the contents of the will; that after his mother's death he took the envelope containing the will to Horace N. Davis, Esq. and that Mr. Davis opened it in his presence and read the contents to him. On the envelope were the words "Will of Kathleen Molden also known as Katie Molden" which were written in his mother's handwriting and were on the envelope when she handed the sealed envelope to him. Mr. Davis corroborated George Molden's testimony as to what occurred in his presence. Davis further testified that the will as it appeared at the trial was in substantially the same condition as it was when he

opened the envelope as to interlineations and blurs; that he called these to George's attention at the time and as to who could have made them and when they were made, and that George said he didn't know anything about it.

It is obvious that the legacy to Harry and to Emma might have been originally $5,000 and might have been changed by the testatrix or by George Molden to $2500. However, Melcher testified that he could not say who wrote the "2", and further testified that the writer used at least two different styles of the numeral "2" *as many other people do.*

Mr. Charles A. Appel, Jr., a former member of the Federal Bureau of Investigation, testified that the sealed envelope had been opened and resealed and in his opinion this was done surreptitiously. Assuming that the envelope was opened surreptitiously, which is only conjectural, this merely creates suspicion against George Molden. There was, we repeat, no evidence that George opened the envelope, or knew the contents of the will or made any of the alterations in the will, nor was there any evidence that the two alterations in controversy were made either before or after the will and the sealed envelope were delivered to him by the testatrix.

Melcher's testimony together with Appel's testimony may be sufficient to justify a change in the legacies to Harry and Emma from $2500 to $5000, but it is totally insufficient to prove "fraud" by evidence which is clear, precise and indubitable. *Melcher never testified that George Molden made the aforesaid alterations, nor did he testify that these alterations were not made or could not have been made by the testatrix.* George Molden was an intelligent, experienced businessman. Assuming he intended to be a crook and to

forge or alter these two legacies, would an intelligent man have written the numeral "2" in each of these gifts *awkwardly and above* the numerals "500" which followed; would he have put a stupid and totally unnecessary comma after 2500 in the gift to Harry; would he have added two naughts *above* the $2000 which testatrix gave her son Walter since the naughts never changed or clarified the gift of $2000 (which incidentally Melcher believed was originally $200 *but was altered by the testatrix* to read $2000) ; would an intelligent man have subsequently added a comma after 2000?

Furthermore, the testatrix's gift to the grandson appears to be a different "5" in the 1500, than the "5" in the gift of 1500 to the granddaughter. An additional and unnecessary word "to" was inserted *by testatrix above* the line in her gift to her grandson, as well as in her gift to her granddaughter, and the "t" in each of these appears different. The words "and contents" were added *by testatrix awkwardly and above* the line in a prior gift. A reading of Mrs. Molden's awkwardly drawn will indicates that the awkward and apparent additions and alterations, *some of which she unquestionably made,* would more likely have been made by testatrix, an obviously uneducated woman, than by an intelligent man who was attempting to alter or forge two small bequests. The evidence pertaining to the alterations leaves much to conjecture and doubt as to whether they were made at all and if so, whether they were made by testatrix and if so when. However, it is clear that the evidence utterly fails to satisfy the legally requisite standard of clear and convincing or clear, precise and indubitable evidence which is necessary to prove fraud on the part of George Molden.

In the light of the foregoing evidence, this is what contestants ask this Court to do:

". . . as George offered no explanation of how the will was spoliated to his advantage; that he cannot take under the will; that your Honorable Court revoke pro tanto the decree of probate made by the Orphans' Court of Bucks County by directing that the Register probate as the will of Katie Molden only the specific monetary legacies to the contestants as originally written, and the legacies [of $1500] to the two grandchildren, . . . and that your court deny probate to the rest of the will.

"As to all the rest of the estate there should be an intestacy (in which of course the proponent-appellee will share). The letters testamentary should be revoked and the Register directed to issue letters of administration d.b.n.c.t.a. on the petition of contestants or of their nominee."

Contestants support their contention of forfeiture and resultant intestacy, by arguing that since the altered will was found in the possession of George Molden, and since the alterations benefited him, (1) he has the burden of explaining and justifying the alterations, and (2) since he cannot prove who made the alterations, he must forfeit all the gifts and especially the residuary estate which testatrix clearly and unquestionably gave him in her will, even though *admittedly* none of the bequests to him were altered. They rely upon the following quotation from Page on Wills (1941), Vol. 2, §886 (page 746):

"If the will has been in the custody of the chief beneficiary, it is said that it is the duty of such beneficiary to explain the presence of pencil marks, together with other circumstances of suspicion; *although no*

*presumption arises as to the person by whom such alterations were made."**

Section 887: "If the will is in the custody of the chief beneficiary, *it has been said** that no presumption arises as to the time at which alterations were made, but that such beneficiary is bound to explain them. If the proponent is benefited by the alterations, *it is said** that he must explain them, and show that they were not made by him." Assuming arguendo that we should adopt this presumption, it would be inapplicable where, as here, the will was for three weeks in the possession of the testatrix and there was *no proof* that she did not make the alterations in issue. Even more important, there is no presumption or rule enunciated by any text authority on Wills,** that an alterer of a legacy thereby forfeits all gifts made to him in the will.

Contestants also cite *Bowman v. Berkey,* 259 Pa. 327, 103 A. 49, which dealt not with a will but with a note. A seal was added to the note after it was signed. Such a material alteration after the note was signed would, under the law, invalidate the note. A judgment was entered against defendant under a warrant of attorney to confess judgment. Defendant testified that the word "seal" was not on the note at the time he signed it and had been added since, without his knowledge or consent. He was corroborated by other witnesses. Plaintiff denied placing the word "seal" on the note, but was unable to say whether the seal was there when defendant signed it. The lower Court opened the judgment and this Court held that its action did not

---

* Italics, ours.

** Which counsel has called to our attention or which we have discovered.

constitute an abuse of discretion. The Court said (page 331):

"The rule in this class of cases is that when an erasure, alteration or interlineation appears on the face of an instrument, there is primarily a presumption in favor of innocence and that the change was made before execution: Simpson v. Stackhouse, 9 Pa. 186; Robinson v. Myers, 67 Pa. 9. If the alteration does not appear to be beneficial to the party offering the writing, or if it is opposed to his interest, or if made with the same pen and ink and in the same handwriting as the body of the writing, this presumption remains unchanged. If, however, the alteration is of a material part and is beneficial to the party offering the writing, or if there is a change on the face of the instrument which appears suspicious, the presumption disappears and the burden is on the party offering the writing to explain the alteration to the satisfaction of the jury: Henry's Penna. Trial Ev., page 184, Section 197, and cases cited."

This last presumption was undoubtedly applicable in that case and may be applicable to documents which can be validly changed only with the consent of all parties. However, there is a basic difference between such documents and a will which may be changed by a testator when and as often as he desires up to the time of his death, irrespective of the wishes of any beneficiary. Furthermore, and most important, *that presumption has no application to a will which was contained in a sealed envelope which part of the time was in the possession of the testatrix.** If that presump-

---

* We again note that Melcher could not express any opinion as to who made the alterations, or whether they were made more than three weeks after the execution of the will, or when they were made.

tion were extended to such a case, it would be dangerous and unwise for anyone to accept and keep a sealed envelope. If in such a case, any part of the document was altered to the benefit of the custodian and the only explanation he could give was the one given by George Molden, namely, that he never opened the envelope and knew nothing of the contents of the will and never made any of the changes, the will and the intentions of the testatrix would often be defeated, and the beneficiary would stand convicted of fraud in the eyes of the community, as well as in the eyes of the law. Opportunity for fraud, suspicion and conjecture do not take the place of evidence or amount to fraud. Contestants forget that fraud is never presumed; it must be proved by clear and convincing evidence, or, as is sometimes expressed, by evidence which is clear, precise and indubitable: *Zakatoff Will*, 367 Pa. 542, 81 A. 2d 430; *Wagner v. Somerset County Memorial Park*, 372 Pa. 338, 93 A. 2d 440; *Bayout v. Bayout*, 373 Pa. 549, 96 A. 2d 876.

In *Zakatoff Will*, 367 Pa., supra, where the contestants argued that the testatrix's signature to the will by a mark instead of by writing her name, was a forgery, the Court affirmed the refusal of an issue and said (page 546): "The execution of a will by a mark by a testator who is able to write his name is prima facie suspicious, although suspicion and conjecture cannot take the place of proof nor are they singly or together sufficient to prove fraud or forgery: Ash Will, 351 Pa. 317, 324, 41 A. 2d 620; Rosenthal's Estate, 339 Pa. 488, 496, 15 A. 2d 370."

In *Bayout v. Bayout*, 373 Pa., supra, the Court below reformed a deed at the suit of plaintiff, who was a Syrian and unable to read or write, and could speak English only with great difficulty. This Court re-

versed and said (page 553): "Our most recent statement on the quality of evidence necessary to prove fraud, is that a party who relies on fraud to establish a claim has the burden of proving the facts upon which the fraud is based by clear and convincing evidence: Wagner v. Somerset County Memorial Park, Inc., 372 Pa. 338, 93 A. 2d 440. The evidence required is sometimes described as 'clear, precise and indubitable'. The quality of evidence in this regard is discussed at length by Justice, now Chief Justice STERN in Stafford v. Reed, Admr., 363 Pa. 405, 410, 70 A. 2d 345, . . . . While it is true that an appellate court will not disturb the basic findings of a chancellor as affirmed by the court en banc when such findings depend upon the credibility of witnesses, *the question of whether the evidence relied upon . . . is legally sufficient to establish fraud* is one of law and may be reviewed by this Court: Stafford v. Reed, supra."

This case is in many respects *sui generis.* The learned hearing Judge took the bull by the horns and relying on Melcher's testimony and the suspicious circumstances gave to testatrix's son Harry Molden and to her daughter Emma L. Fischer the total amount, viz., $5,000., which they believed had been *originally* written by the testatrix. The hearing Judge also ruled that testatrix's son Walter was entitled to a legacy of $2,000., even though Melcher thought the original bequest was $200. but was subsequently changed by testatrix to $2,000. and even though the four 0000 written above it made the gift ambiguous or questionable. Since there was not a scintilla of evidence, but only suspicion, that the reduction in the legacy to Harry Molden and to Emma L. Fischer from $5,000. to $2,-500., was made by George Molden, the lower Court refused to declare a forfeiture of testatrix's bequests

(and devise) to George, and allowed probate of the will as thus interpreted.

Assuming, arguendo, contestants had proved that George Molden had altered the legacy to Harry Molden and to Emma L. Fischer, they cite only one case, *In re Wilson*, 8 Wisconsin 171 (which, because of its facts, is clearly distinguishable), to support their conclusion that the alteration of a legacy caused a forfeiture by the alterer of all the bequests which were clearly and unquestionably made to him by testatrix in her will. Since there was no evidence that the alterations were made by George Molden, it is unnecessary to decide whether the alteration of a legacy causes a forfeiture by the alterer of the testamentary bequests which were unquestionably made to him.

The parties stipulated that the testimony and other evidence taken before the Register of Wills may be considered with the same force and effect as if taken before the hearing Judge of the Orphans' Court for the purpose of determining whether an issue d.v.n. should be granted.

The lower Court aptly said: "The foregoing discussion permits the final disposition of all matters in dispute at this time and without the grant of an issue. No substantial dispute of fact has arisen on either side and therefore no issue should be awarded. A finding by a jury against proponent's interests under the will as a whole upon contestants' theory of forfeiture, or in favor of the presently appearing amounts of the disputed pecuniary legacies to Harry Molden and Emma L. Fischer, or contrary to the results of Mr. Melcher's examination as to the original figures in all the questioned legacies, would not be permitted to stand on the present record; hence, it is not only unnecessary, but would actually be improper, to award an issue involv-

ing such matters: Conway Will, 366 Pa. 641, 649 and cases cited. See the several opinions in Lare Will, 352 Pa. 323, for a comprehensive discussion of the determination of whether or not a substantial dispute exists."

Proponents have not appealed. The *test*—so far as the contestants are concerned—as to whether or not an issue should be granted by the hearing Judge of the Orphans' Court is whether the evidence, *considered as a whole*, raises a substantial and material dispute of fact sufficient to justify a verdict in favor of contestants which the Judge, upon a consideration of the entire evidence, would approve: *Conway Will*, 366 Pa. 641, 79 A. 2d 208; *Lare Will*, 352 Pa. 323, 42 A. 2d 801; *Johnson Will*, 370 Pa. 125, 87 A. 2d 188; *Zakatoff Will*, 367 Pa., supra; *Higbee Will*, 365 Pa. 381, 75 A. 2d 599; *Sturgeon Will*, 357 Pa. 75, 53 A. 2d 139; *DeLaurentiis's Estate*, 323 Pa. 70, 186 A. 359; *Ross Will*, 355 Pa. 112, 49 A. 2d 392.

In *Lare Will*, 352 Pa., supra, the Court said (page 329): "The granting of an issue devisavit vel non is not always a matter of right. . . . This dispute must be a substantial dispute: Fleming's Estate, 265 Pa. 399, 406; Kane's Estate, 312 Pa. 531, 534; Kline's Estate, 322 Pa. 374, 378. The existence of a substantial dispute can only be determined by consideration of the evidence as a whole. 'It is the evidence of the fact on the one hand and the evidence in denial on the other, which raises such a substantial and material dispute . . .': Hile's Estate, 310 Pa. 541, 544. An issue should be denied where after careful consideration of all the evidence a verdict in favor of the petitioner would have to be set aside as against the weight of the evidence: Hile's Estate, supra, 544; Fleming's Estate, supra, 406. An issue should be granted where the evi-

dence is such that a verdict for either party would be permitted to stand: Hile's Estate, supra, 544; Kane's Estate, supra, 534; DeLaurentiis's Estate, 323 Pa. 70, 78; Kline's Estate, supra, 378. The rule is the same regardless of the party petitioning for the granting of an issue: Kane's Estate, supra, 534. It is the function of the hearing judge to determine whether there is a substantial dispute upon a material matter of fact. . . . . Upon appeal to this Court the chancellor's decision will not be reversed unless there appears to have been an abuse of discretion: DeLaurentiis's Estate, supra, 78; Dible's Estate, 316 Pa. 553, 554."

We agree with the lower Court that considering the evidence as a whole, it was insufficient to raise a substantial and material dispute which would justify the granting of an issue. Certainly it cannot be said that the lower court abused its discretion.

We may add that the lower Court reached a fair and just result, and at the same time carried out the testatrix's intentions which, as has often been said, is the pole star of every will.

The Decree is affirmed; each party to pay his or her respective costs.

Mr. Chief Justice JONES and Mr. Justice CHIDSEY dissent.