## Livesay v. Crafton Village, Inc.

*John W. Vaccaro*, for plaintiffs.

*Bernard M. Borish* and *Wolf, Block, Schorr & Solis-Cohen*, for defendant.

ALESSANDRONI, P. J., July 14, 1958.—The original plaintiff, an unincorporated association, instituted this action in equity by two trustees ad litem, seeking relief for losses sustained by members of the association who relied on defendant's alleged misrepresentations. The unincorporated association consists of a group of purchasers of houses in Nottingham Village, an area developed by defendant corporation. Defendant answered and counterclaimed; plaintiff's preliminary objections to the counterclaim were sustained. At the hearing, by agreement, a group of individual home owners were substituted as the real parties in interest as plaintiffs in lieu of the unincorporated association.

Upon conclusion of the hearing, after careful consideration of the pleadings and testimony, it was determined that plaintiffs had an adequate remedy at

law. Plaintiffs' complaint is an action in fraud and deceit; the claim is one for money damages. The mere fact that a number of people have joined or pooled their efforts as party plaintiffs does not confer equitable jurisdiction over the subject matter. After consideration of the state of the record, and upon consultation with counsel, it was stipulated and agreed that the case be transferred to the law side of the court. To expedite the litigation it was further stipulated and agreed that the court decide the matter upon the record as a judge without a jury.

Plaintiffs allege in their complaint that defendant by its agents, servants or employes willfully and fraudulently represented to the individual plaintiffs that the properties purchased had "city water and sewer" facilities, that defendant willfully and fraudulently failed to disclose that a pro rata share of the cost of the system was not included in the purchase price of the properties, that defendant had a duty to disclose the above information, that plaintiffs have been injured and damaged in that the water and sewer bills received from the authority include an increment for amortization of the cost of constructing the water and sewer system.

Plaintiffs seek a decree declaring that the cost of the water and sewer system was part of the purchase price, that the properties be declared to be free and clear of the costs of constructing the water and sewer system, that defendant be ordered to account for the cost of construction and that the cost of construction which can be rateably determined to be due from their properties be paid to the Bensalem Township Authority by defendant.

Defendant's answer denies the material elements of the allegation of the complaint.

Inherent in plaintiffs' allegation of fraud and deceit is the meaning of the phrase "City Water and Sewer."

Plaintiffs' interpretation is that it was the understanding of the parties that the cost of installation of the system was included in the purchase price of the homes built by defendant. Defendant's position is that "city water and sewer" means connection of the houses into a public system as opposed to individual water and sanitary disposal systems for each home, that the water and sanitary facilities for the houses are operated publicly, that the term has no reference whatsoever to the cost of the systems as such, but merely refers to manner of ownership and operation.

Apart from the question of cost, it is agreed that plaintiffs obtained city (public) water and utilize a public sewer facility; a public or city water and sewer system was merely one of many features advertised by defendant upon opening of the sample house as items to be found in the actual houses to be constructed. Insofar as it is material it appears that defendant has provided the features which it advertised.

In order to establish a right to recover, plaintiffs are required to prove that defendant misrepresented a material fact, that defendant knew the fact was false, that plaintiffs relied on the misrepresentation, that plaintiffs had a right to rely thereon and that plaintiffs have sustained a loss: Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442. Manifestly, if plaintiffs fail to establish any of the foregoing elements, they cannot prevail.

The misrepresentation which is the basis of the action is that defendant failed to disclose that, the phrase "city water and sewer" did not include the cost of the system. If that is the misrepresentation, then plaintiffs must prove that the ordinary meaning comprehends in addition to the actual facilities, the cost of constructing the systems to provide the common facilities, i.e., a water and sewer main system. Some of plaintiffs testified as to their understanding of the

phrase; to support their position, plaintiffs called witnesses from the Veterans' Administration and the Federal Housing Administration. The witnesses were called for the purpose of establishing that the plans and specifications approved by these agencies of the United States, required that the costs of construction of the common water and sanitary sewer system be apportioned among the units to be constructed and such apportionment would be part of the purchase price. Unfortunately for plaintiffs, the testimony of the two witnesses did not furnish the aid intended.

The Veterans' Administration, V.A. hereinafter, upon application issued a master certificate of reasonable value for 485 properties in the Nottingham development. The reasonable value was stated to be $10,700 for inside properties, slightly more for corner properties. The Federal Housing Administration, F.H.A. hereafter, issued a mortgage insurance commitment for $9,750.00. The distinction between the two actions is this: The V. A. value is the maximum price for the property; the F. H. A. value is the maximum mortgage value which F. H. A. will insure; it is not a ceiling on the price.

The master certificate of reasonable value dated August 31, 1954, specified that sewer, gas and electric utilities were to be included within the valuation. An individual certificate for Lot 76 Dresner Road, dated December 15, 1954, contained the same requirement. Also the individual certificate, although based on a certificate for $10,700, had an established reasonable value of only $9,990. There is no question that the utilities were furnished and are part of the property.

The master certificate also contained the following: ". . . with definite statement as to whether builder or local municipality will install base of street and/or street topping." The second or continued master certificate, dated April 26, 1955, contained the same lan-

guage. The significance of the cited portion is increased when it is read with the testimony of Charles Flanagan, chief of the V. A. appraisal section. The V. A. appraisal section establishes the reasonable value of the properties on the basis of specifications submitted; thereafter inspections are made to insure that builder has complied with the specifications and has furnished that which is set forth in seller's application.

Plaintiffs refer to the certificate of reasonable value as to utilities and to the testimony of the chief of the V. A. appraisal section, Charles Flanagan, to support their position that the phrase comprehended the costs of the system. However Flanagan, when questioned as to the meaning of "city water and sewers", testified:

"What that means is the facilities to the lines and laterals in the street to the lines of the property are to be provided by the builder within the limit of reasonable value."

Analysis of the statement leads to the conclusion that the facilities (or connections) between the lines and laterals in the street (the water and sewer main system) and the lines (pipes) of the property are to be provided by the builder. There is no question but that the builder has provided the necessary connections into the system. Where there was doubt as to an item to be included in the valuation, the V. A. required that information be furnished as to the party who would bear the cost of same. The V. A. did not raise any question about the construction of the water and sewer systems.

So also was the testimony of the assistant chief appraiser of the F. H. A., Mr. Campbell. His testimony was not in accord with plaintiffs' interpretation and hence afforded no assistance in establishing plaintiffs' contention. He testified that the specifications required connection to public sewers. The costs of installing the system was not an item within the purview

of the application to and the specifications filed with the F. H. A.

It appears that plaintiffs received that which they bargained for. If that be so, then wherein lies the fraud and deceit? The allegation is that by misrepresentation plaintiffs did not get what they had bargained for and were therefore injured. If the phrase "city water and sewer" encompassed construction of the system, then defendant by silence misrepresented facts. Deliberate nondisclosure of material facts can constitute a culpable misrepresentation. See Neuman v. Corn Exchange National Bank & Trust Company, supra; A. L. I. Restatement of the Law of Torts, §529. However, if not a misrepresentation, then defendant had no duty to disclose any facts and even willful concealment of same would not constitute a fraud.

It is further worthy of note that as a fact of modern economics, utility bills include therein an increment for construction and maintenance of the system as well as the cost of use of the system, or of the matter consumed, such as water, gas or electric. Plaintiffs in this instance are in the same position as every other home owner. Also, plaintiffs have offered no evidence which would tend to establish that the real value of their homes is less than the fictitious value at which it was purchased: Cunningham v. Ray, 263 Pa. 492.

Plaintiffs did not produce any testimony that defendant through its agents, servants or employes misrepresented any facts about the cost and/or construction of the water and sewer system. The closest to a misrepresentation is the alleged statements made at different times to several plaintiffs individually by a salesman for defendant that the anticipated water and sewer bill would be between $20 and $50 a year. Since no water rate was then in existence, the statements, even if made willfully and recklessly, would not be actionable. Water and sewer bills are in the

nature of taxes and a vendee may not rely upon the vendor's representation as to future taxes: Suraci v. Ball, 160 Pa. Superior Ct. 349.

The allegation of fraud and deceit fails because of lack of proof; plaintiffs had the burden of proving the fraud by clear and convincing evidence: Molden Will, 387 Pa. 484. The evidence produced is demonstrably below that standard.

We do not include the lengthy history of the Bensalem Water Authority and the facts and circumstances of the operation of the water and sewer system. These facts do not shed any light on the question of what was meant by the words "city water and sewer", and, therefore, although interesting, are not relevant.

*Order*

And now, to wit, July 14, 1958, the court finds for defendant.