## Okowitz Will.

Argued January 5, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*James Rutherford,* with him *Kathleen A. McDonnell,* and *Louis B. Nielsen,* for appellants.

*Leigh B. Maxwell,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 23, 1961:

On July 23, 1952, Anthony Okowitz, a Wayne County resident, died in Honesdale, Pa. Surviving him as next-of-kin were four sisters, two brothers and the son of a deceased brother.[1] After Okowitz's death, a paper which purported to be his last will was found in a dresser drawer in his bedroom. The validity of this paper, directed to be probated as Okowitz's last will, is the subject of these appeals.

An appeal was taken[2] from the probate of this will to the Orphans' Court of Wayne County; after a hearing, that court upheld the probate and dismissed

---

[1] In the disputed will (according to proponents) one sister, three nieces, the son of the deceased brother and a sister-in-law each received one (1%) percent, and one sister ninety-four (94%) percent of the residue. Two sisters and two brothers were not mentioned in the will.

[2] That appeal was taken by *all* those relatives who would share in the event of intestacy, with the exception of Theresa Warwick, who, under the will, claims ninety-four (94%) percent of the residue.

the appeal. Thereafter, the matter was reopened by the court;[3] after a hearing, the court vacated its former decree and returned the matter to the Register of Wills to determine "what part or parts of the will, if any, . . . [might] be admitted to probate." The parties then stipulated that the Register of Wills should decide the issue upon the testimony previously taken and on that which is apparent upon the face of the will. So acting, the Register of Wills decided that no part of the will should be admitted to probate. From the Register's ruling an appeal[4] was then taken, hearings were held and the court, finding no substantial dispute of fact, sustained the appeal and directed that the will, with the exception of certain parts thereof, be admitted to probate. The court found that the residuary bequests to a niece, Helen Higgins, and a sister-in-law, Anna Elizabeth Hensel, had been "obliterated and crossed off in the Will", that the residuary bequest to a sister, Mollie McDermott, had been "1" percent when the will was executed and not "2" percent as now appears on the face of the will and that the "name of Anna Elizabeth Hensel as executrix had been crossed out and the name of Theresa Warwick written in by [Okowitz]." Accordingly, the court cancelled the Higgins and Hensel bequests, reduced the McDermott bequest from "2" to "1" percent and directed the appointment of an administrator of the estate. From that decree, two of decedent's sisters have appealed to this Court.

The will, lawyer-prepared and dated January 2, 1940, was entirely typewritten with two exceptions:

---

[3] As its reason, the court below stated: "Sometime later, it was discovered that certain figures appeared in the copy of the will which the Register had testified in the original hearing he could not see on the Will."

[4] This appeal was taken by decedent's sister, Theresa Warwick.

(1) in each residuary bequest a space was left for the insertion of the particular percentage of the residue each named legatee would take and each of these spaces was filled in with a handwritten numeral or numerals and (2) the signatures of the decedent and his two witnesses were handwritten. At the bottom of the will is an attestation clause in the usual form signed by the two witnesses.

As the will was presented for probate its residuary clause (Item Third) appeared as follows: "All of the rest, residue and remainder of my said estate, real, personal and mixed, of whatsoever kind and character and wheresoever situate, I give, devise and bequeath to the following named persons, to them and their heirs and assigns forever, in the percentages set opposite their respective names, viz:*

"To my sister, Mollie McDermott, of New York City, an undivided 2 percent.

"To my sister, Theresa Warwick, wife of Edward Warwick, of Honesdale, Pennsylvania, an undivided 94 percent.

"To my niece, Helen McDermott, of New York City, an undivided 1 percent.

"To my nephew, Vincent Okowitz, son of Joseph Okowitz, an undivided 1 percent.

"~~To my niece, Helen Higgins, wife of Robert Higgins, of~~ Honesdale, Pennsylvania, ~~an undivided~~ 1 ~~percent.~~

"~~To Anna Elizabeth Hensel, of Honesdale, Pennsylvania, an undivided~~ percent.[5]

---

* The numerals inserted in the percentage spaces of the respective bequests were all handwritten in ink. The phrase, "My Sister Threresa Warwick" was handwritten and inserted and appeared above the phrase "ANNA ELIZABETH HENSEL", which was lined out with a pencil.

[5] Proponents claim that decedent inserted "1", while contestants claim he inserted "50", in this blank space.

"To my niece, Anita Warwick of Honesdale, Pennsylvania, an undivided 1 percent.

"LASTLY: I hereby nominate, constitute and appoint Executrix of this my last Will and Testament, My Sister Threresa Warwick ~~ANNA ELIZABETH HENSEL~~ of Honesdale, Pennsylvania, . . . ."

The court found, and its finding is supported by uncontradicted evidence, that the will was prepared, at Okowitz's direction, by Lester R. Male, a member of the bar. In the will, seven persons were named as the residuary legatees but, at Okowitz's direction, the specific percentages of the residue the legatees were to take were left in blank. After the will was prepared but prior to its execution, Okowitz took the will with him and, sometime later, he returned it to Attorney Male. *At that time* the percentages opposite the names of the residuary legatees had been inserted in handwriting, and, in that form, the will was then signed by Okowitz and witnessed by Attorney Male and Miss Lindsay, his secretary.

Twelve years later this will was found in decedent's possession and presented for probate. At that time the will differed in some respects from its condition at the time it was executed, the authority for such fact being the testimony of the scrivener, Attorney Male, and the very appearance of the face of the will. The Higgins and Hensel[6] bequests had been obliterated and lined out with a pencil and the name of Anna Elizabeth Hensel, as executrix, had been obliterated and lined out with a pencil and the handwritten phrase "My Sister Threresa Warwick" was inserted above the obliterated name of Anna Elizabeth Hensel. While the court below found that the decedent had obliterated the Hensel name and inserted

---

[6] Anna E. Hensel, a named legatee and executrix, died after the execution of the will but long prior to Okowitz's death.

the Warwick name and while there is no express denial of that fact by contestants, actually the only basis for such finding is the court's own conclusion after an examination and comparison of the handwriting "My Sister Threresa Warwick" with a specimen of Okowitz's admittedly genuine handwriting. Assuming, arguendo, that it was Okowitz who crossed out the name of Anna Elizabeth Hensel and substituted the name of Theresa Warwick, it is clear that, in view of Mrs. Hensel's death, Okowitz intended to substitute Mrs. Warwick as her successor, i.e., to revoke the one appointment and to make another.

A naked eye scrutiny of the will, as probated, would indicate a disposition of the residue as follows: (1) to Mollie McDermott "2" percent; (2) to Theresa Warwick "94" percent; (3) to Helen McDermott "1" percent; (4) to Vincent Okowitz "1" percent; (5) to Anita Warwick "1" percent, a total disposition of ninety-nine (99%) of the residue.[7] Contestants have no quarrel with the amount of the bequests to Helen McDermott, Vincent Okowitz and Anita Warwick, being satisfied that such amounts were as originally provided by Okowitz in his will. It is their claim that not only were the Hensel and Higgins bequests obliterated and crossed off but that the Mollie McDermott and Theresa Warwick bequests were raised by Okowitz or someone else and that such changes are not valid under the Wills Act of 1947.[8]

The action of the court below in striking off the Higgins and Hensel bequests was proper. That a bequest or bequests may be revoked by a testator by drawing a line or lines through such bequest or be-

---

[7] If this disposition were correct, then the Hensel and Higgins bequests necessarily would each have had to be for fractional percentages of "1" percent, otherwise the residuary clause would have been dispositive of more than "100" percent of the residue.

[8] Act of April 24, 1947, P. L. 89, §2, 20 PS §180.2.

quests is beyond question: *Sando Will*, 362 Pa. 1, 66 A. 2d 312; *Heller Estate*, 158 Pa. Superior Ct. 194, 44 A. 2d 528. In this connection and under the instant factual situation, two presumptions must be considered. Even though there is no direct proof that Okowitz drew the lines through the Higgins and Hensel bequests, the fact that the will remained in his possession and control until his death gives rise to a presumption that the acts of obliteration or cancellation were performed by him: *Sando Will*, supra, 1. There is another presumption that alterations or changes made in a will in the handwriting of a testator were made prior to the execution of the will (*Molden Will*, 387 Pa. 484, 487, 128 A. 2d 568 and cases therein cited) but such presumption is presently inapplicable in view of the scrivener's uncontradicted testimony that such alterations and changes had not been made at the time that the will was executed. Presumptively, Okowitz by drawing lines through the two bequests obliterated and cancelled them and such action, taken after the will had been executed, legally revoked both bequests.

In disallowing the attempted substitution of Theresa Warwick as executrix and directing the appointment of an administrator for the estate, the court acted properly. Again, the fact that the will remained in Okowitz's possession until his death gives rise to the presumption that the changes and alterations were made by him and the scrivener's testimony firmly fixes the time of such changes and alterations as subsequent to the will's execution. By lining out Mrs. Hensel's name as executrix her appointment was effectively revoked; even though not revoked, her death, of course, nullified the original appointment. The attempted substitution as Mrs. Hensel's successor of Mrs. Warwick must fall; such substitution required a re-execution of the will in this respect in order to

comply with the Wills Act of 1947, supra, and such compliance is entirely wanting.

In *Molden,* supra, this Court recently considered alterations made by some unidentified person in the amount of bequests after the time of execution of the will. In *Molden,* inter alia, two bequests, originally each $5000 (in the opinion of a handwriting expert) but $2500 when the will was offered for probate, were increased by this Court to the amounts which the bequests were at the time the will was executed, particularly since an examination of the face of the instrument showed awkwardness, erasures and alterations in the figures as they appeared in the will. In reliance on *Molden,* the court below decreased the amount of the Mollie McDermott bequest from "2" to "1" percent. The scrivener testified that at the time the will was executed each residuary legatee, including Mollie McDermott and excluding Theresa Warwick, was to receive "1" percent of the residue and that such percentage had been inserted in the residuary clause when it was returned to the scrivener's office by Okowitz and appeared therein when the will was signed. Even the most cursory examination will indicate that the figure "2" in the Mollie McDermott bequest has been overwritten and is suggestive in appearance of an alteration. Such appearance, together with the scrivener's testimony, is sufficient to support the finding of the court below in this respect, and, on the state of the record, whoever made such alteration and change did so after the time of execution of the will. On the authority of *Molden,* the restoration of the amount of this bequest to its original figure was eminently correct.

With the elimination of the *Hensel* and *Higgins* bequests, the reduction of the *Mollie McDermott* bequest and the concession of the validity of the *Helen McDermott, Vincent Okowitz* and *Anita Warwick* be-

quests, is the will probatable? Contestants take the position that their evidence plus the appearance of the will itself clearly proves that the bequest to Theresa Warwick was "1" percent of the residue and that such percentage was altered and changed, after the date of the will's execution, to "94" percent of the residue. The contestants have not proved, nor do they consider it incumbent upon them to prove, who made the change or alteration, it being sufficient, in their view, that the figure "1" was changed to "94" after the execution of the will and that such change cannot be effective because of noncompliance with Section 2, of the Wills Act of 1947, supra. Contestants also contend that the Hensel bequest was originally not "1" percent, but "50" percent of the residue. If that position is correct and if the Theresa Warwick bequest was originally "94" percent, then Okowitz disposed of a total of 149 or 150% of the residue of his estate, dependent on whether the Mollie McDermott bequest was originally "1" or "2" percent. In support of their position, contestants rely on the testimony of F. B. Trumm, the Register of Wills, the testimony of R. F. Jennings and the *record* of probate of the will. On March 2, 1954, Trumm testified that, with the aid of a magnifying glass, he was able to decipher the interlined Hensel bequest in the following manner: "To Anna Elizabeth Hensel, of Honesdale, Pennsylvania, an undivided—'*can't determine the amount*'—but percent is the last word." (Emphasis supplied). He then stated that he was able to discern that which the writing originally stated "*excepting for the numerals in the percentage space*". (Emphasis supplied). A year and a half later, Trumm again testified and, on this occasion, he read the Hensel bequest in the following manner: "To Anna Hensel of Honesdale, Pennsylvania, an undivided fifty percent" and he stated that at the time the will was

offered for probate[9] "That is what [he] discerned it to be" and "That is the way [he] probated it". The most that can be stated for this testimony, conflicting and contradictory as it is, is that it simply represents the witness' opinion, garnered not from experience or expert knowledge, but from a visual examination of the paper itself. It is strange that no other witness, including the witness Jennings, was able to so readily perceive the numerals "50" in the Hensel bequest when the clear implication of Trumm's testimony is that in order for one to *see* the numerals one simply had to *look*. A reading of Trumm's testimony reveals its inherent weakness as well as the manner in which the witness completely contradicted himself.

R. F. Jennings, a Honesdale photographer of 14 years experience, examined the will through the medium of photography. Although it was his first experience as an expert witness, he did consult with a representative of Eastman Kodak Company, and a lieutenant in the New York State Crime Bureau. In his examination, Jennings photographed both the front and back of the will; in so doing, he employed in some photographs a special copy film with a special filter, in other photographs ultra-violet light, and in other photographs infra-red film with infra-red filter. Jennings examined both the Hensel and Theresa Warwick bequests in an attempt to discover the presence of numerals in connection therewith. In connection with the Hensel bequest, one photograph (Exhibit A) disclosed the numerals "5", "0", "3", another photograph (Exhibit B) disclosed the numerals "5" and two "3's", another photograph disclosed a "5" but not

---

[9] The will was offered for probate on July 23, 1952, nine months before Trumm first testified and over two years before he testified the second time.

a "1", another photograph (Exhibit E) a "5" but not a "1", another photograph (Exhibit F) a "5" but not a "1", another photograph (Exhibit G) a "5", another photograph (Exhibit H) a "5" but not a "1" and another photograph (Exhibit K) no numerals at all. In substance, the photographs did not disclose the numeral "1" and only the numerals "5", "0", "3", "3", the implication being that the percentage originally shown in the Hensel bequest had to be a combination of "5", "0", "3", "3" rather than the numeral "1".

In connection with the Theresa Warwick bequest, one photograph (Exhibit D) showed a "1", another photograph (Exhibit E) showed the "1" as "1", not "94", another photograph (Exhibit F) showed "1" clearly and the rest of the figure light, another photograph (Exhibit G) "1" fluoresced darker than the rest of the figure, another photograph (Exhibit H) fluoresced "1" darker than "94", and another photograph showed "1" fluoresced dark and the rest of the figures somewhat lighter. Although there was no testimony as to any erasure in this bequest, contestants urge that Jennings' testimony proves that the original bequest to Theresa Warwick was "1" percent, that a loop was affixed to "1" thus converting it into a "9" and "4" was then placed to the right of the "9" making the bequest "94".

If we assume, arguendo, that the contestants are correct in their position, i.e., that the Theresa Warwick bequest was "1" percent and the Hensel bequest was not "1" but some combination of "5", "0", "3", "3", then, as the proponent clearly indicates in her brief, Okowitz's disposition of his estate was considerably less than 100% of the residue. Taking any combination of "5", "0", "3", "3" (50, 53, 33, 30), together with a bequest of "1" percent to each of the other residuary legatees, the disposition of residue by

Okowitz would range from 36% to 59%. That a person interested in the disposition of his estate to the extent he consulted a lawyer and then took home with him the unexecuted will in order to determine the several percentages the residuary legatees would receive would leave undisposed of 40% to 60% of his estate is most unlikely.

Contrasted with the testimony of both Trumm and Jennings is the testimony of the scrivener who stated that when the will was executed the percentages had all been filled in and they totalled 100% of the residue. A comparison of the conflicting and contradictory testimony of Trumm and the nebulous and conjectural testimony of Jennings with the positive testimony of the scrivener of this will indicates the weak basis of contestants' position.

The bequest to Theresa Warwick of 94% of the residue far overshadowed all the other bequests. The scrivener testified that he questioned Okowitz at the time the will was executed concerning this and was assured that such was his desire. Okowitz and Ed Warwick, the husband of Theresa Warwick, were in the shoe business, the latter being an employee, and the relationship between the Warwicks and Okowitz was very close. The court found, and such finding is supported by the evidence, that "Theresa Warwick, the principal beneficiary, was the one person who had cared for [Okowitz] and had taken care of him and would be the natural object of his bounty." Our examination of the record confirms this finding and we discern nothing unnatural in the bequest to Theresa Warwick of the bulk of his estate by the decedent.

When the original appeal was taken to the Orphans' Court of Wayne County from the probate of this will the petition contained a demand for a jury trial. After that court had dismissed the appeal, reopened the matter and returned it to the Register, the

Register then determined that the will could not be probated. In the petition for an appeal from that ruling no demand for a jury trial was made. Proponent now urges that contestants by their actions have waived a jury trial under Section 745 of the Orphans' Court Act of 1951, as amended, 20 PS §2080.745. That question we need not determine for, even assuming contestants had properly demanded a trial by jury to which they were entitled in the event there was a substantial dispute of a material fact, the record before us does not disclose a substantial dispute of fact. In *Molden*, supra, 500, Mr. Justice BELL, speaking for this Court, well stated: "The *test*—so far as the contestants are concerned—as to whether or not an issue should be granted by the hearing Judge of the Orphans' Court is whether the evidence, *considered as a whole*, raises a substantial and material dispute of fact sufficient to justify a verdict in favor of contestants which the Judge, upon a consideration of the entire evidence, would approve: [citing cases]". The scope of our review in this type of situation is to determine whether the hearing judge has abused his discretion: *DeLaurentiis's Estate*, 323 Pa. 70, 78, 186 A. 359.

Considering the evidence on this record in its entirety it is manifest that no substantial dispute of fact exists. Trumm professes a sensory reaction to the print on this document which no one else sustains. The contradiction and conflict in his testimony renders valueless his conclusion. If Jennings' testimony be accepted, we reach the absurd result that Okowitz disposed of only a small portion of the residue of his estate. On the other hand we have the uncontradicted testimony of the scrivener of this will that at the time Okowitz executed this will Theresa Warwick under its terms was to receive 94% of the residue and the balance was to be divided among the six named legatees

who were each to receive 1% and, furthermore, that the will when executed made a disposition of 100% of the residue of the estate. The evidence of Trumm and Jennings carries little weight against the testimony of the scrivener under the circumstances. The disposition of a person's estate should not be discarded or thwarted upon the basis of the quality of the proof herein produced by contestants.

Lastly, contestants urge that proponents have failed to comply with the "two witness rule" (*Hock v. Hock,* 6 S. & R. 47; *Rhodes Will,* 399 Pa. 476, 160 A. 2d 532) in proof of this will. Such argument is without merit. Contestants contend that neither the date of execution nor the contents of the document with regard to the condition of the blank spaces when the will was executed have been shown by two witnesses. Both subscribing witnesses, Attorney Male and Miss Lindsay, through oral testimony and the attestation clause to which they affixed their signatures, fulfilled the statutory requirements of proof as to the execution of this will. It was not necessary that these witnesses know the contents of the will nor was it incumbent upon proponent to prove that they knew the contents of the will. Contestants' reliance on the "two witness rule" under the circumstances is unjustified.

From our examination of this record we find no abuse of discretion on the part of the court below. Both the Higgins and Hensel bequests were properly cancelled, the appointment of Mrs. Hensel as executrix was properly revoked, the substitution of Mrs. Warwick as executrix was not validly accomplished and the Mollie McDermott bequest was correctly reduced to its original percentage. Alterations and changes made in this document subsequent to the execution thereof clearly dictate these results. However, the other parts of the will which remained unaltered and unchanged are not affected by the court's

refusal to recognize changes made after the will was executed and such parts of the will are probatable.

Decree affirmed.   Costs on contestants.

Mr. Justice COHEN dissents.