## Howanec Estate

Before Klein, A. J., Bolger, Saylor, Shoyer and Silverstein, JJ.

## ADJUDICATION

BOLGER, J., January 8, 1971.—Theresa Howanec died April 27, 1969, not survived by a spouse but survived by four children, one of whom is a daughter, Anna Davis, executrix under a will dated September 14, 1951. She filed a petition for a citation directing another child of the decedent, Margaret Newton, to show cause why she should not turn over to the estate certain funds held in a savings account in the name of decedent, trustee for Margaret Newton. The issue was heard at the audit of the executrix's account. In addition to oral testimony, the executrix offered an unsigned copy of a will executed by the decedent in 1963, the original of which was retained by the decedent, but was not located at her death. This writing contained a clause in which decedent expressed an intent that Margaret Newton should divide the moneys on deposit among the testatrix's children, the effect of which would revoke the tentative trust. The

writing was not offered as a testamentary instrument but rather as evidence showing that decedent had a fixed present intent to revoke the trust account. However, it cannot be so limited. The clause is contained in a will which is an ambulatory instrument which speaks as of the date of death. The effect of any such limitation would be to inject a probate element into a distribution proceeding: Rockett Will, 348 Pa. 445. The oral testimony concerning the question of revocation of the trust account was so conflicting that no reliance can be placed upon it by the auditing judge and he is required to relegate himself to the documentary testimony. That consists of the unsigned copy of the will of 1968 but this affords no comfort for the reason that the original was retained in the possession of the testatrix and, not being found there at her death, the presumption is that she destroyed it: Okowitz Will, 403 Pa. 82; Sando Will, 362 Pa. 1. Counsel for the executrix cites Koehler Estate, 316 Pa. 321, as authority for allowing the writing in evidence to show the intent of testatrix. Our view is inapposite. In Koehler Estate it was held that a prior will could not be shown to have been revoked by parol evidence of a later will. Even though testatrix did express an intent, the later revocation of the 1963 instruments extinguishes that expressed intent. This view is supported by the fact that the account title was not changed at any time prior to the death of decedent in 1969. Counsel for the beneficiary contends that executrix cannot have the benefit of one part of the 1963 writing without assuming the burden of other parts; that is, that the 1963 will revoked the 1951 will. With this we agree. In Ingels Estate, 372 Pa. 171, the beneficiary of a similar bank account offered a letter written by testatrix to prove that the account was irrevocable. The court held that other parts of the letter led to a different

conclusion. In this case the 1963 will would revoke that of 1951. Under Section 6 of the Wills Act of 1947 as amended, it is provided:

"If, after the making of any will, the testator shall execute a later will which expressly or by necessary implication revokes the earlier will, the revocation of the later will shall not revive the earlier will, unless the revocation is in writing and declares the intention of the testator to revive the earlier will, or unless, after such revocation, the earlier will shall be reexecuted. Oral republication of itself shall be ineffective to revive a will."

There is no evidence in this case that the requirement has been met. The auditing judge finds that no clear and convincing evidence oral or written in this record sustains the executrix; therefore the savings account passes to the named beneficiary.

Objection was made to the fee claimed by counsel for executrix. In view of the equities of this case the objection is dismissed. . .

And now, January 8, 1971, the account is confirmed nisi.

*Thomas M. Thistle, Jr.,* for exceptant.

*Edward J. Gilson,* for Margaret Newton.

*Henry Fineman,* for Commonwealth.

OPINION SUR EXCEPTIONS TO ADJUDICATION

SHOYER, J., March 11, 1971.—Is an existing Totten trust revoked by an express clause in a later will, which will in turn is revoked by testatrix? This is the narrow issue presented by the exceptions on behalf of the executrix.

The 1951 will of Theresa Howanec, a/k/a Theresa Chovanec, a widow, provided legacies of $200 each to the two children of a deceased child and then divided

the rest, residue and remainder of her estate in equal shares among her five living children. Anna, the oldest child, was named executrix. Testatrix was foreign born and not too literate in the English language.

On July 19, 1954, decedent opened a savings account in the Philadelphia Saving Fund Society entitled "Theresa Howanec in trust for Margaret Newton." Margaret Newton is a younger sister of Anna. At testatrix's death on April 27, 1969, this fund with interest exceeded $8,379.62. In September 1963, testatrix accompanied Anna Davis on a visit to Norfolk, Virginia. While there, she became ill with double pneumonia and during her hospitalization testatrix executed a lawyer-drawn will in which she made express reference to the aforesaid savings account and stated her intent that "Margaret Newton should equally divide all monies on deposit in said saving society among my children, share and share alike."

A carbon copy of this will, conformed as to the names of three witnesses but not the testatrix, was produced before the auditing judge by the executrix. The original was not produced. Uncontroverted evidence placed possession of the original document in testatrix, and its nonproduction sustains the holding of the learned auditing judge that it was presumptively destroyed by her *animo revocandi:* Okowitz Will, 403 Pa. 82; Sando Will, 362 Pa. 1.

Despite the provisions of section 6 of the Wills Act of 1947, which would revoke the 1951 will, *ipso facto,* by execution of the 1963 will containing an express clause of revocation, the will of 1951 was admitted to probate and letters testamentary were granted to Anna Davis, the executrix nominated therein. No contest of the probate has been made before the register of wills or in this court. The matter comes before us as a problem in distribution at the audit of the account of

Anna Davis, with which was combined a hearing on the citation issued against Margaret Newton and the Philadelphia Saving Fund Society to bring the savings fund into the decedent's estate. The learned auditing judge resisted the injection of a probate element and in so doing is fully supported by Rockett Will, 348 Pa. 445.

Counsel for the executrix contends that the revocation of the Totten trust in the 1963 will was unequivocal and immutable, and must stand as an accomplished fact despite testatrix's later revocation of the will itself, and the further fact that testatrix made no change in the title of the savings account although, admittedly, she had plenty of opportunity to do so. His argument overlooks the unique and essential characteristics of a will, that the instrument by its very nature is ambulatory and takes effect dispositively only at the death of testatrix.

Under the common law, an express revocatory clause was also considered ambulatory so that a revocation of the later instrument would presumptively revive an earlier will which had not been physically destroyed. The question of revival has always presented a difficult problem. "In early times there existed a divergence of opinions between the ecclesiastical law and the common law. The ecclesiastical courts decided that the revocation of the first will took effect *at the execution* of the second one, but that the first will might be *revived* if the evidence disclosed this to be the testator's *intention*. The common law courts, on the contrary, took the position that a revocation of a prior will was ambulatory and therefore did not take effect until the death of testator; if the revoking will itself was subsequently revoked the former will stood as if the later will had never been executed . . . ": Burtt Will, 353 Pa. 217, 221.

Judge Stearne (later Mr. Justice Stearne) while a member of this court, stated five possible theories which might be adopted:

"1. The earlier will is revived as a matter of law. 2. The earlier will is revived unless an intention to the contrary appears. 3. The earlier will is not revived. 4. The earlier will is not revived unless an intention to revive it appears. 5. The question is one of intention without any presumption for or against revival . . .

"The first theory: That the earlier will is revived as a matter of law is the accepted common law view. The basic reason for the rule is that a will is ambulatory until death, and, therefore, a will which is *itself* revoked can have no effect as a revoking instrument. This was the rule anciently applied in England. It had its inception . . . in an opinion by Lord Mansfield in Goodright v. Glazier, 4 Burr. 2512 (1770). It is interesting to note that, irrespective of the ultimate result of Lord Mansfield's decision, the court at that early date felt that the ascertainment of intention was important as bearing on the question of the revival of the former will . . .

"Our Pennsylvania courts, always alert to preserve and enforce, wherever possible, a testamentary intent, have rejected the common law rule and have accepted the second theory mentioned in the foregoing annotation, to wit, the earlier will is revived unless an intention to the contrary appears": Fords Estate, 13 D. & C. 87, 99, 100 (dissenting opinion, reversed on appeal, 301 Pa. 183).

In Pennsylvania, the revocation of a will as well as its creation must comply with certain statutory requirements. Section 5 of the Wills Act of 1947, April 24, P. L. 89, 20 PS § 180.5, provides:

No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or codicil. By some other will or codicil in writing,

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the document. By being burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

The many cases construing this statute and its predecessors recognize a distinction between total and partial revocation. But where the will was last in possession of testatrix and is not produced its *total* destruction by testatrix will be presumed: Murray Will, 404 Pa. 120; Bates's Estate, 286 Pa. 583. Such destruction nullifies not only the contents of the will but even a declaration of trust endorsed upon it: Fidelity T. & T. Co. of Pittsburgh et al. v. Graham, 262 Pa. 273, 276. Here the only direct evidence before the learned auditing judge was that of a granddaughter who lived with testatrix. When asked what her grandmother had done to the original after receiving the copy from the Virginia attorney-scrivener, this witness testified: "She tore them up, made confetti of them, and I threw them out." Although this granddaughter's testimony was not directly contradicted, the learned auditing judge considered the evidence as to revocation so conflicting that he preferred to rely on the documentary testimony, to wit, the production of the carbon copy of the 1963 instrument and the nonproduction of the original, which all parties conceded to have been in decedent's possession.

Section 6 of the Wills Act, which adopts the ecclesiastical view as to nonrevival of an earlier will, is an innovation in Pennsylvania law. It provides that for the purpose of revocation the later will takes effect immediately. Its revocatory clause is no longer ambulatory. Nothing has been mandated, however, as to the remainder of the instrument, which must therefore remain ambulatory in accordance with the rule of the common law. " 'Statutes are never presumed to make any innovation in the rules or principles of the common law or prior-existing law beyond what is expressly declared in their provisions' ": Holton Estate, 399 Pa. 241, 247.

The total destruction of the later will inevitably results in the revocation of its entire contents except for its nonrevival of an earlier will. As above mentioned, testatrix was seriously ill and away from home when the 1963 will was drafted and executed. Had she, when restored to health, at any time entertained a deliberate intention to revoke the Totten trust, she could have changed the title of the account with the bank or withdrawn the entire fund.

The document which testatrix executed under stress was by its very nature equivocal, alterable, and ambulatory. This fleeting expression of intent evaporated into thin air with testatrix's destruction of the instrument itself. Hence, the auditing judge was fully warranted in refusing to appraise its validity or evaluate its effect at other than a will contest raising the issue of probate. Pennsylvania recognizes that a valid will may revoke a Totten trust where the testamentary intent is adequately expressed, Scanlon's Estate, 313 Pa. 424, but a general clause in a later will disposing of the entire estate is insufficient, Pozzuto's Estate, 124 Pa. Superior Ct. 93, and we hold that the general residuary clause in this probated will cannot

affect a Totten trust which is of later creation. We also hold that this 1963 will can be given no more lasting effect than the letters which were written by the donor and later invalidated in Ingels Estate, 372 Pa. 171. In Ingels the fiduciary intent was revoked by withdrawal of the fund; here it was preserved by the total destruction of the will.

The exceptions are dismissed, and the adjudication is confirmed absolutely.